GILBERT COLLINS et al., executors, respondents,

*v.*

MARY B. WARDELL et al., appellants.

[Filed March 3d, 1903.]

1. A testatrix provided by her will as follows : "I direct my executors hereinafter named, out of the residue of my estate, to set apart a fund sufficient to produce an income of $6,000 a year and out of said income to pay to my brother William Phyfe $4,000 a year, and to my brother Duncan Phyfe $2,000 a year for the term of their lives, respectively, and after their death, I direct the capital of said fund to be divided equally among" six persons named. William Phyfe predeceased the testatrix.—*Held,* that immediately upon setting apart the fund sufficient to produce the income of $6,000, the executors should divide two-thirds of the capital fund so set apart among those entitled to it under the will.

2. The words "after their death," in the above clause of the will, construed to mean "after their respective deaths."

Collins *v.* Wardell.

On appeal from a decree of the chancellor, whose opinion is reported in *18 Dick. Ch. Rep. 371.*

The bill in this case was filed by the executors and trustees of the will of Mary P. Wintringham, deceased, to obtain a construction of the fifteenth, sixteenth and seventeenth clauses of that will. These clauses are as follows:

"*Fifteenth.* I direct my executors hereinafter named, out of the residue of my estate, ·to set apart a fund sufficient to produce an income of $6,000 a year, and out of said income to pay to my brother William Phyfe $4,000 a year, and to my brother Duncan Phyfe $2,000 a year, for the terms of their natural lives, respectively, and after their death, I direct the capital of said fund to be divided equally among the said Mary Wardell, Maria Wintringham, Thomas Wintringham, Joseph Wintringham, William Wintringham and Henry C. Wintringham.

"*Sixteenth.* It is my will that if any or either of the above-named legatees or devisees shall die before my death, the bequest or devise to the person dying shall lapse.

"*Seventeenth.* All the rest, residue and remainder of my estate, real or personal, of or to which I shall die seized, possessed, or in any way entitled, I do give, devise and bequeath to the said Emma P. Purdy, Mary Wardell, Emily Haight, Henry C. Wintringham, William Wintringham and to Franca Wintringham, the grand-niece of my late husband, and the two children now living of the said Thomas Wintringham, to be divided equally among said persons, share and share alike, and I direct that any inheritance tax to be levied or charged against my estate be paid out of that portion thereof bequeathed in this paragraph."

William Phyfe, the brother of the testatrix, to whom an annuity of $4,000 was bequeathed by the fifteenth clause of the will, predeceased the testatrix.

Thomas Wintringham, one of the persons mentioned in the fifteenth clause of the will among whom the capital fund was to be distributed, also predeceased the testatrix. All the other persons named in the fifteenth and seventeenth clauses of the will are still living, some of those mentioned in the seventeenth clause being infants. The executors have now in hand a clear residue of personalty, amounting to $188,129.84.

The bill asks the chancellor to construe the will and direct and advise the complainants how much to set apart as trust

fund, provided by the fifteenth paragraph thereof, and how much to reserve for immediate distribution thereunder as security for the annuity to the said Duncan Phyfe, and how, when and to whom to distribute such trust fund.

The decree orders that the will be construed to the effect that notwithstanding the death of William Phyfe and Thomas Wintringham before the death of the testatrix, a fund sufficient to produce an income of $6,000 a year must be set apart under the fifteenth paragraph of said will, and that upon the death of Duncan Phyfe, named in said paragraph, and not until then, the capital of five-sixths of said fund will be payable to the legatees in remainder named in said paragraphs who survived the testatrix, and that the one-sixth of the said fund which, but for his death before the death of said testatrix, would have been payable to Thomas Wintringham, and all of the income of said fund until the death of the said Duncan Phyfe, except the annuity of said Duncan Phyfe, must be disposed of under the seventeenth paragraph of said will. The decree further orders that the fund set apart shall be not less than $150,000, and that said complainants have leave to apply to the chancellor, on the foot of the decree, for an order of reference to a master to ascertain and report how much larger, if any, such sum shall be, and which securities now in the hands of the executors shall constitute said fund and what valuation shall be set therein for that purpose. Mary B. Wardell, Maria L. Wintringham and Joseph P. Wintringham appeal from so much of the decree as orders that not until the death of Duncan Phyfe, named in the fifteenth paragraph of the will of the testatrix, will any part of the capital fund to be set apart under said paragraph be payable to legatees in remainder thereunder, and that the one-sixth of said fund which, but for his death before the death of the said testatrix, would have been payable to Thomas Wintringham, and all of the income of said fund until the death of said Duncan Phyfe, except the annuity of said Duncan Phyfe, must be disposed of under the seventeenth paragraph of said will.

*Mr. Charles L. Corbin* and *Mr. R. Burnham Moffat* (of the New York bar), for the appellants.

*Mr. William Brinkerhoff,* for the respondent Emma P. Purdy.

*Mr. Chauncey G. Parker,* for the respondents Frances Wintringham, Henry B. Wintringham and Georgia Wintringham.

The opinion of the court was delivered by

GARRETSON, J.

We agree with the conclusion of the learned chancellor, that the complainants were entitled to the aid, advice and direction of the court; that the death of William Phyfe before the testatrix did not operate to defeat the gift of the fund to the persons to whom she bequeathed it by the fifteenth paragraph of the will; that the executors·are bound to set apart so much of the residue in their hands as·will be reasonably sufficient, when properly invested, to furnish an income of at least $6,000 a year; that a sum of not less than $150,000 is such a sum; that the share of Thomas Wintringham, who predeceased the testatrix, given under the fifteenth paragraph of the will, by the provision of the sixteenth paragraph lapsed and fell into the residue, to be disposed of by the seventeenth paragraph.

We have reached a different conclusion, however, as to the time when the capital fund set apart by the executors to produce an income of $6,000 a year, in accordance with the directions of the fifteenth clause of the will, shall be distributed. We think that distribution of two-thirds of that capital fund should be made as soon as it is set apart by the executors. William Phyfe, to whom two-thirds of the income of $6,000 a year was by the will to go, having predeceased the testatrix, and the interest of those in this fund who survived her having become vested by her death, no reason exists, unless it so appears from the will itself, why any more of the fund than is sufficient to raise the annuity of $2,000 for Duncan Phyfe should be retained by the executors. We are not able to find in the will the

24

intention of the testatrix that the entire fund should be held by the executors until the death of Duncan Phyfe.

The language used by the testatrix indicates an intention to have the capital fund distributed at such times as the necessity for holding it to accomplish the purpose of the testatrix, namely, to produce $4,000 a year for one brother for his life and $2,000 a year for the other brother for life, ceased.

The will did not merely provide incomes for the brothers, but also fixed a certain sum for distribution among others therein named, else it might be said that there was no necessity for the executors to set apart more than enough to produce $2,000 a year; but the testatrix wanted to give to those in that paragraph mentioned a certain sum absolutely, which she determined should be the principal sum producing $6,000 a year.

The testatrix made no disposition of any accumulation of income beyond that necessary to pay the annuities, respectively; such accumulation would arise because of the death of any annuitant before the other, unless the capital sum necessary to raise the annuity of the one who died first were distributed upon his death, and this circumstance bears upon the intention of the testatrix.

The direction of the testatrix,

"and out of said income to pay to my brother William Phyfe $4,000 a year, and to my brother Duncan Phyfe $2,000 a year *for the terms of their natural lives, respectively, and after their death* I direct the capital of said fund to be divided equally," &c.,

means that the capital fund is to be divided upon the respective deaths of the annuitants, the income having been paid to them for their respective lives. The words "their death," in the connection used, can mean only "their respective deaths." These words were not expressive of a single event, but of the death of each one; that is, their respective deaths.

The cases seem to support the contention that where the income of a single fund is bequeathed to two or more persons for life, with remainder over "after their death," the courts

COLLINS *v*. WARDELL, 20 DICK. CH. REP. 371.

Vote for *reversal* in above case should read:

*For reversal*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, FORT, GARRETSON, PITNEY, VREDENBURGH, VOORHEES, VROOM —9.

construe these words to mean "after their respective deaths," and decree a present division of the fund and a distribution of the part thereof not required to produce income for the life-tenants.

In *Woolston* v. *Beck, 7 Stew. Eq. 74,* a testator gave the use of a farm to his two daughters, S. and K., for life, S. to have two-thirds of the income and K. one-third. "And after the decease of my two daughters," to their children in fee, in specific portions. S. died, leaving children. *Held,* that on her death the person to whom the remainder was given became entitled to the possession of the other two-thirds. The chancellor held that the words "after the death of my two daughters" will be construed to mean after the death of the two, respectively. In *Stoutenburgh* v. *Moore, 10 Stew. Eq. 63,* the will provided:

"All the rest and residue of my estate, real and personal, I give, devise and bequeath the income to my two sons, Robert and Edward, to be equally divided between them during their lives, and *at their* death to be equally divided between my grandchildren, to them, their heirs and assigns."

It was held that upon the death of Edward his child was entitled to a moiety of the estate absolutely, the chancellor saying: "He certainly intended that at the respective deaths of his sons the shares of the residue, of which he gave them, respectively, the income, should go over; for he directs that 'at their deaths'—by which he meant their respective deaths— the residue shall be divided between his grandchildren." *Budd* v. *Haines, 7 Dick. Ch. Rep. 488; Pennington* v. *Rutherford, 11 C. E. Gr. 313; Jackson* v. *Luguere, 5 Conn. 221.*

The decree will be reversed.

*For reversal*—The Chief-Justice, Van Syckel, Fort, Garretson, Pitney, Vredenburgh, Voorhees, Vroom—8.

*For affirmance*—None.