LUCY PHILBERT, Appellant, v. HATTIE CAMPBELL et al.—296 S. W. 1001.

Division One, June 25, 1927.

1. **WILL: Construction: In Light of Existing Law.** A will must be construed, and testator's intention as expressed therein must be ascertained and determined, in the light of the statutes existing at the time the will was made and at the time of his death.

2. ———: **Life Estate: Joint Estate or Cotenancy.** A clause of the will reading: "I give and bequeath to my beloved wife, Iva Robinson, and my beloved niece, Hattie Campbell, all the balance of my property, both real and personal, to have and to hold during their natural life, and at their death the remaining property to be divided among my brothers and sisters, share and share alike," did not create a joint life estate in the wife and niece, because it did not expressly declare that the estate given to them was to be in joint tenancy, as the statute (Sec. 2273, R. S. 1919) requires; but it created a tenancy in common, and made the wife and niece co-tenants in the life estate, and the wife having predeceased the testator the niece did not take a lifetime use of the whole, but only a lifetime use of an undivided half, and the brothers and sisters were entitled to the immediate use of the other half.

3. ———: **Intention: Conflict with Statute.** Effect must be given to the intention of the testator as gathered from the will unless it violates some inflexible rule of law, but the intention must give way if it conflicts with an express statute. Unless the will expressly declares that a devise of a life estate to a wife and niece shall be in joint tenancy, the statute (Sec. 2273, R. S. 1919) declaring that every interest in real estate devised to two or more persons shall be a tenancy in common, unless expressly declared in such devise to be in joint tenancy, compels a holding that the life estate is a tenancy in common, in which each has an equal undivided interest, and that after the death of the wife the whole does not go to the niece by survivorship, but she continues to have only a life estate in the moiety devised to her.

4. ———: ———: **To Create Joint Tenancy: Equivalent Words: Enforced by Environment.** Admitting that the intention to create a joint tenancy may be expressed in other words equivalent in meaning to the words "joint tenancy," and reading the will in the light of the testator's surroundings and environment, and remembering that his family consisted of himself, his wife and his niece and that the wife was an invalid, and that the niece had been a member of his family for fifty years and had cared for and waited upon him and his wife for forty years, and that his affections for the niece were

deeply rooted and firmly grounded, and that his brothers and sisters did not visit with him nor he with them during his lifetime, still it cannot be held that his will giving to his wife and niece "all the balance of my property, both real and personal, to have and to hold during their natural life, and at their death, the remaining property to be divided among my brothers and sisters, share and share alike," expressly declared that the interest of the wife and niece was to be in joint tenancy, and that, after the death of the wife, which occurred prior to testator's death, the niece, by survivorship, was to have the sole use of the whole property during her life, for the words of the will are not equivalent in meaning to the words "joint tenancy" and an intention to create a joint tenancy is not "expressly declared" by them, and in such case the statute says that the interest devised shall be a tenancy in common.

5. ———: **Devise of Tenancy in Common: Division at Their Death.** The words "at their death" in a devise to a wife and niece "during their natural life, and at their death, the remaining property" to brothers and sisters, mean "at their respective deaths," and the interest devised being a tenancy in common in a life estate the moiety of each is divisible among the brothers and sisters as the death of each life tenant occurs.

6. ———: **To Class: Survivorship.** A devise to a wife and niece "during their natural life" is not a devise to a class, and upon the death of the wife the niece does not take the entire property as the only survivor of the class. It is a devise to life tenants as named individuals, in which each takes a separable equal moiety, and not to a class of beneficiaries.

7. ———: **Lapse of Devise: Death of Devisee Prior to Death of Testator: Inheritance.** A lapse of a devise will be prevented by implication where the will shows a clear intention that the property shall go to others upon the death of the devisee. Where the will gave all of the balance of testator's property to his wife and niece during their natural life, and the remaining property at their death to his brothers and sisters, and "should they be not living, then to their children," and the wife died prior to the death of the testator, there was no lapse of the devise to her, but the moiety intended for her upon testator's death went, by substitution, directly to the brothers and sisters. But, even if there was a lapse, the result in this case, in which testator left surviving no descendant, father or mother, would be the same, for by statute, if he died intestate as to the wife's moiety, it went upon his death to his brothers and sisters, and their descendants, in equal parts, as his heirs.

8. **PARTITION: Devise of Life Estate: Death of One Life Tenant.** The devise of real property being to a wife and niece during their natural life as tenants in common, and at their death to testator's brothers and sisters, and to the children of such as were not living, and the wife having died prior to testator's death, the brothers and sisters, and the descendants of such as are deceased, are entitled to partition and distribution of the property devised to the wife, without waiting for the termination of the niece's life estate, subject to her lifetime use and enjoyment of the other half.

---

Corpus Juris-Cyc. References: **Wills**, 40 Cyc., p. 1385, n. 77; p. 1388, n. 88; p. 1409, n. 4; p. 1474, n. 90; p. 1508, n. 90; p. 1518, n. 62; p. 1636, n. 50; p. 1925, n. 18; p. 1933, n. 62; p. 1934, n. 65.

Appeal from Osage Circuit Court.—*Hon. R. A. Breuer*, Judge.

REVERSED AND REMANDED (*with directions*).

*E. M. Zevely* and *John P. Peters* for appellant.

(1)   In view of the statute and in the absence of any express declaration of a joint tenancy in the will, the circuit court erred in not declaring a tenancy in common.  Sec. 2273, R. S. 1919; Rodney v. Landau, 104 Mo. 259; Lemmons v. Reynolds, 170 Mo. 233; Johnston v. Johnston, 173 Mo. 113; Cohen v. Herbert, 205 Mo. 549; King v. Theis, 272 Mo. 422; Lounden v. Bollam, 258 S. W. 440.   (2)   The judgment of the lower court is contrary also to the holding of appellate courts of other States, whose statutory law on this subject is substantially the same as the Missouri statute.   Cockrill v. Armstrong, 31 Ark. 586; Estate of Hittell, 141 Cal. 432; Slater v. Gruger, 165 Ill 320; Mustain v. Gardner, 203 Ill. 285; Kimberly Case, 150 N. Y. 90; Seely v. Seely, 44 Pa. St. 434; Sturne v. Sawyer, 2 Pa. Sup. Ct. 254. ·(3)   It is the intention which the testator expresses in his will that controls, and not that which he may have had in his mind. 40 Cyc. 1386-1390.   The plain and unambiguous words of the will must prevail and cannot be controlled or qualified by any conjectural or doubtful constructions growing out of the situation, circumstances or condition of the testator, his property or the natural objects of his bounty.   1 Schouler on Wills (5 Ed.) 586, sec. 466.   The intention which is to be sought for in the construction of a will is not that which existed in the mind of the testator, but that which is expressed by the language of the will.   Gee v. Gee, 107 Ill. 313.   The true inquiry is not what the testator meant to express but what the words used by him do express.   Stokes v. VanWyck, 83 Va. 724.   If a testator use words which clearly create one estate, though he designed another, his intention must yield to the rules of law.   Hertz v. Abrahams, 110 Ga. 707.   In general it may be said that a testator is presumed to have known the legal consequences of his will.   Couch v. Eastham, 69 W. Va. 70.   (4)   It is essentially true that the intention of the testator shall be sought and effectuated in construing and enforcing wills, but this rock-ribbed rule of construction, so strictly and faithfully followed in this State, is subject to this very vital qualification, to-wit:  That it must not conflict with any inflexible rule or requirement of law.   Such is the case here.   The statute has declared the effect of a conveyance or devise of real estate in the event that the grant or devise does not expressly declare that a joint tenancy is intended.   No such intention is expressly declared in this will.   It is, therefore, not within the power or the province of the courts, under any rule of interpretation or to carry out an unexpressed intention of the grantor or testator to construe such a grant

or devise to be a joint tenancy, for the statute says that it is a tenancy in common. Lemmons v. Reynolds, 170 Mo. 234. (5) Where the income of a single fund is bequeathed to two or more persons for life with remainder over "after their death" the courts construe these words to mean "after their respective deaths," and decree a present division of the fund and a distribution of the part thereof not required to produce income for the life tenants. Collins v. Wardell, 65 N. J. Eq. 370; Woolston v. Beck, 7 Stew. (N. J. Eq.) 74; Moore Case, 10 Stew. (N. J. Eq.) 63. (6) Where, in a legacy to more than one person, there is no definition of the proportions in which they are to take, they take equally. Thompson on Wills, sec. 194, p. 175.

*Vosholl & Monroe* and *Gove & Davidson* for respondents.

(1) The intention of the testator was that his estate be kept intact until the death of both life tenants, and partition was postponed by the will until such time. Gibson v. Gibson, 280 Mo. 529; Hill v. Hill, 261 Mo. 58; Crossan v. Crossan, 262 S. W. 701. (2) If the intention is not plainly expressed in said will then words may be used and read into the will necessary to make the intention of the testator clear, and words may be interpolated so as to arrive at the testator's intention and to correctly express his intention. Sec. 555, R. S. 1919; Schee v. Boone, 295 Mo. 222; Bernero v. Union Trust Co., 287 Mo. 602; Grace v. Perry, 197 Mo. 550; Gannon v. Pauk, 200 Mo. 85. (3) Lands cannot be partitioned against the intention of the testator. Sec. 2005, R. S. 1919; Cannon v. Heirs of Curtis, 175 Mo. App. 84; Bernard v. Keathley, 230 Mo. 224. (4) Where a will fixes the time for a division of property, partition cannot be had prior to the time fixed. Hill v. Hill, 261 Mo. 58. Partition will not be made where the will indicates testator's intention that the property should not be divided during the life of the life tenant. Shelton v. Brag, 189 S. W. 1174. (5) The intention of the testator controls in the construction of a will. The first and foremost rule is that the will shall be so construed as to give effect to the intention of the testator; all other rules of construction are subordinate to this rule. Gibson v. Gibson, 280 Mo. 529; Sec. 555, R. S. 1919; Sec. 508, R. S. 1909; Grace v. Perry, 197 Mo. 550. All technical rules for construing a will should be disregarded when they conflict with the manifest intention of testator. Drake v. Crane, 127 Mo. 85. (6) In determining the intent of the testator the court should place itself as nearly as may be in the position of the testator, so it may interpret words in the light he intended they should have. Cross v. Hoch, 149 Mo. 325; Grace v. Perry, 197 Mo. 550. (7) Although lands may be granted to others in common yet the partition, alienation or disposition thereof may be postponed. A reasonable restriction will be recognized whether this life estate be in common or in joint ten-

ancy.   The time of the division, partition and final disposition of
the estate was fixed at the death of both life tenants.   Stockwell v.
Stockwell, 262 Mo. 671; Gibson v. Gibson, 280 Mo. 531.

SEDDON, C—This is a statutory action in partition.   The sub-
ject of the action is certain described lands, situate in Osage Coun-
ty, Missouri, which were owned at his death by one Thomas J. Rob-
inson, who died testate, and whose will was made and executed on
August 26, 1916, and was duly probated in the Probate Court of
Osage County on March 3, 1919.   Plaintiff is a half-sister of the
testator. . Defendant, Hattie Campbell, is a niece of testator, and
is a devisee named and provided for in his will.   The remaining
defendants are a brother and a sister of testator, and the descend-
ants of his deceased brothers and sisters.

The testator, Thomas J. Robinson, by his will in evidence, made
certain bequests of personalty to certain named legatees, and then
provided, in the fifth clause or paragraph of said will, as follows:

"I give and bequeath to my beloved wife, Iva Robinson, and my
beloved niece, Hattie Campbell, *nee* Robinson, all of the balance of
my property, both real and personal, to have and hold during their
natural life, and at their death, the remaining property to be di-
vided among my brothers and sisters, share and share alike.   Should
they be not living, then to their children."

Upon the construction of the foregoing paragraph or clause of
the will, this action hinges.   The cause was tried upon the follow-
ing agreed statement of facts:

"Thomas J. Robinson, testator in this will, and Iva Robinson,
his wife, and Hattie Campbell, devisees in said will, composed his
family.   Testator had no children born of the marriage.   Hattie
Campbell was testator's niece and lived with him and his wife
practically all of her life, going there when a child, and was liv-
ing with deceased at the time of his death.   His wife died prior to
death of T. J. Robinson.   Testator's brothers and sisters did not
visit with deceased, nor he with them, in his lifetime.   The wife
of said testator was, for many years prior and up to her death, in
ill-health and an invalid.   Testator and his wife were very much
attached to said Hattie Campbell.   And said testator left about
$20,000, consisting of real and personal property, now of the value
of $15,000.   Said Hattie Campbell kept house and waited upon tes-
tator and his wife until their death, for more than forty years.   Said
Hattie Campbell and said Iva Robinson never had any means of
support of their own at the death of said testator, and, at the time
of the making of said will, Hattie Campbell was about fifty years
old.   Said plaintiff is a half-sister of Thomas J. Robinson, the tes-
tator, who, at his death, owned the lands in question, and is an old

woman 67 years old and without means of support. Said testator, his wife and niece were all kind and affectionate toward each other.''

Testimony was adduced that the real estate in question is not susceptible of division in kind among the parties in interest.

The petition alleges, in substance, that plaintiff and the defendants are the owners in fee and tenants in common in and to the described lands, subject to an estate for life of said Hattie Campbell in and to an undivided one-half thereof; that said Thomas J. Robinson, deceased, is the common source of title and that, by his last will and testament, he made the residuary bequest and devise as set out in the fifth clause of his will aforesaid; that said Iva Robinson, wife of the testator, predeceased the testator, said Iva Robinson having died on January 5, 1919, and the said testator, Thomas J. Robinson, having died on February 25, 1919; that plaintiff is a sister of testator, and that defendants are respectively the brother, the sister, and the children of deceased brothers and sisters, of testator; and that one-half of the described lands cannot be divided in kind without great damage and injury to the parties in interest; wherefore, judgment is prayed decreeing a sale of said one-half of the described lands and for the distribution of the proceeds arising therefrom among the parties entitled thereto according to their respective rights and interests, and for such other orders as the court might deem just and proper.

Defendant, Hattie Campbell, answered, denying generally all of the allegations of the petition, and alleging further in the answer that ''said land cannot be partitioned for the reason that a partition of said land would be against the intention of Thomas J. Robinson, the testator, as expressed in his last will and testament.''

A guardian *ad litem* was appointed for Vernon Brock, an infant defendant, and said guardian filed an answer on behalf of his said ward, denying generally the allegations of the petition, and alleging further that ''said land cannot be partitioned until after the death of Hattie Campbell, life tenant, for the reason that partition of the land would be contrary to the intent of the testator, Thomas J. Robinson, as expressed in his last will and testament.'' The remaining defendants made default.

At the close of the trial, the court announced his finding and conclusion, as follows: ''I think from all the testimony, or from all the circumstances concerning this case and from the general directions of the will, and from the fact you have to take into consideration, in construing this will, that there was personal property as well as real estate, when you take all that into consideration, the personal property as well as the real estate, the fact that these people were all living as one family, and had been for a number

317 Mo. Sup.—36.

of years, I think they are joint tenants." The trial court thereupon entered judgment in favor of defendants and against the plaintiff, denying partition of any part of the lands in question. Motion for a new trial was timely filed by plaintiff and overruled by the trial court, and plaintiff was allowed an appeal to this court.

It will be observed that the trial court, prior to the entry of judgment, expressed the conclusion that the fifth clause or paragraph of the will of Thomas J. Robinson created a joint tenancy in the devisees therein named, Iva Robinson and Hattie Campbell, and that, Iva Robinson having predeceased the testator, the **Joint** surviving devisee, Hattie Campbell, thereupon became **Estate.** vested with, and took, an estate for life in all of the property, both real and personal, devised and bequeathed under said fifth clause or paragraph of the will of Thomas J. Robinson. The plaintiff and appellant, Lucy Philbert, takes the position that, by the fifth clause of his will, the testator devised a life estate in common to the two devisees therein named, Iva Robinson and Hattie Campbell, thereby making them tenants in common (had they both survived the testator) in and to the life estate in the realty devised in and by said fifth clause of the will; and that, if a tenancy in common was so created, and Iva Robinson having predeceased the testator, either the devise made to Iva Robinson lapsed, or the moiety or share devised to her passed to the residuary devisees named in said clause, to-wit, the brothers and sisters, if living, of the testator, and the children of such brothers and sisters, respectively, of the testator who are not living, without any right, interest, or life estate of Hattie Campbell in such moiety by virtue of her survivorship.

The will of testator must be construed, and his intention as expressed in the will must be arrived at and determined, in the light of the statutes of this State existing at the time of the making of the will and the death of testator, for the testator must be presumed to have had knowledge of the existing statutory law, and to have made his will in the light of, and subject to, the existing statutory law. [28 R. C. L. 233, sec. 193; 40 Cyc. 1385.]

The statute of this State (Sec. 2273, R. S. 1919) provides: *"Every interest in real estate granted or devised to two or more persons, other than executors and trustees and husband and wife, shall be a tenancy in common, unless expressly declared, in such grant or devise, to be in joint tenancy."* (Italics ours.) The statute aforesaid has been construed on several occasions, and applied by this court in the construction of wills.

In Rodney v. Landau, 104 Mo. 251, 259, a testator, James I. Reily, by his will provided that "any other property . . . hereafter acquired shall belong to my wife, Elizabeth C. Reily, during her

lifetime, and afterward be joint property, transferable by joint deed of James E. and Mary Jane Reily, or either of them may sell their interest in such property after the decease of their mother, and Mary Jane attains the age of twenty-one years." James E. Reily survived his sister, Mary Jane Reily, who died intestate and without issue, and the mother, Elizabeth C. Reily, survived her son, James E. Reily. The action was in ejectment. Plaintiff claimed title to the whole property and estate so devised by descent from James E. Reily and defendants claimed title under Elizabeth C. Reily, the surviving mother of James E. and Mary Jane Reily, and the widow of testator. Said BLACK, J., speaking for this division of this court in that case: "The next question is whether these remaindermen (James E. and Mary Jane Reily) were tenants in common or joint tenants. According to the statute an interest in real estate granted or devised to two or more persons, not executors, trustees, or husband and wife, is a tenancy in common, 'unless expressly declared, in such grant or devise, to be in joint tenancy.' [R. S. 1865, sec. 12, p. 443.] Now, while the testator speaks of this property as their 'joint property' transferable by 'joint' deed, still there is no express declaration that it is to be held by them in joint tenancy. It is quite common to speak of property as joint property when nothing more is meant than ownership of the same property by different persons. The policy of the American law is opposed to survivorship, and that policy is clearly indicated in our statutes. While joint tenancies are not abolished in this State, still to create such a tenancy there must be an express declaration to that effect in the deed or will creating the estate, and that is not done by the will of James I. Reily. Purdy v. Purdy, 3 Md. Ch. 547, is in point and to the same effect."

In Lemmons v. Reynolds, 170 Mo. 227, 233, a suit in partition, the will of testatrix provided: "Second, I will to my two sons, James C. Reynolds and John W. Reynolds, the following described real estate [being the property involved in said partition suit] . . . Third, I will to my son David Lemmons one dollar, it being all I give to him except what I have already advanced to him." John W. Reynolds predeceased the testatrix. Testatrix was survived by her sons (by different husbands), James C. Reynolds and David Lemmons, and by a daughter, Willie Ann Turner. Plaintiff, David Lemmons, claimed an undivided one-third interest in the moiety or share of John W. Reynolds in the lands devised by the second clause of testatrix's will, by virtue of the Statute of Descents and Distributions, because John W. Reynolds predeceased the testatrix and died intestate and without issue. James C. Reynolds claimed the whole of the devise as the surviving member of a joint tenancy, which he claimed to have been created by the second clause of the

will. Said this division of this court, speaking through MARSHALL, J.: "In the case at bar, there is a devise of real estate to two persons, and there is no express declaration in the will that they are to hold as joint tenants. Therefore, the express mandate of the statute, that it shall be a tenancy in common, applies and controls. It is essentially true that the intention of the testator shall be sought and effectuated in construing and enforcing wills, but this rock ribbed rule of construction, so strictly and faithfully followed in this State, is subject to this very vital qualification, to-wit, that it must not conflict with any inflexible rule or requirement of law. Such is the case here. The statute has declared the effect of a conveyance or devise of real estate in the event that the grant or devise does not expressly declare that a joint tenancy is intended. No such intention is expressly declared in this will. . . . It is, therefore, not within the power or province of the courts, under any rule of interpretation or to carry out an unexpressed intention of the grantor or testator, to construe such a grant or devise to be a joint tenancy, for the statute says it is a tenancy in common. Grantors or testators who do not wish the statute to apply, and to create only a tenancy in common, are given the right to so arrange it, but they must expressly declare in the grant or devise that a joint tenancy is intended, or else the courts must construe it to be a tenancy in common. There is no distinction under the statute between a deed and a will in this regard."

Again, in the later case of Cohen v. Herbert, 205 Mo. 537, wherein testator devised certain real property to his "said daughters, Julia and Victoria, jointly," Division Two of this court held that the two daughters named in the devise became tenants in common, and not joint tenants, under and by virtue of the statute aforesaid, and that, upon the death of Victoria without issue and intestate, her share or moiety passed, not to Julia alone as the survivor, but to the brothers and sisters of Victoria in equal shares, there being no surviving parent of Victoria.

Of like tenor and effect are the uniform holdings of the courts of our sister States having statutes identical in language with, or bearing close similarity to, our own statute. [Cockrill v· Armstrong, 31 Ark. 586; Estate of Hittell, 141 Cal. 432; Mustain v. Gardner, 203 Ill. 284; Matter of Kimberly, 150 N. Y. 90; Seely v. Seely, 44 Pa. St. 434.] Freeman, in his standard text on Cotenancy and Partition (2 Ed.), page 174, section 109, lays down the general rule in these words: "A bequest or devise to two or more persons, under which, if both survived the testator, they would become tenants in common, will lapse as to the share of the one dying before the testator. The survivor can take only the moiety devised or bequeathed to him, and can gain nothing by the decease of him who, had he outlived the testator, would have taken the other moiety."

Construing then the will of Thomas J. Robinson, and arriving at
the intention of the testator as expressed therein, in the light of
the statute existing at the time of the execution of the will and
the death of testator, and in view of our prior holdings and con-
struction of such statute, we are constrained to hold that clause
fifth of said will created a tenancy in common in the devisees and
life tenants therein named, because of the absence of an express
declaration in the devise that the named devisees shall take the
devise in joint tenancy.

Respondent, Hattie Campbell, contends, however, that the pri-
mary and controlling question to be ruled and determined herein
is not whether a joint tenancy or tenancy in common was created
by the fifth clause of testator's will, but what was the testator's
**Intention.** intent as to the time when the estate or property devised
is to be divided, partitioned and distributed; and, fur-
thermore, that such intent can best be ascertained by the court
putting itself, so far as may be, in the place of the testator and read-
ing the directions of the will in the light of the testator's environ-
ment at the time he made the will. It is said that, in arriving at
the true intention of the testator, we must give due consideration
to the environment and surroundings of the testator, as disclosed
by the agreed statement of facts herein; namely, that the testator
had no children, and that respondent, Hattie Campbell, had lived
with testator and his wife, Iva Robinson, practically all her life,
and since she was a child; that the wife of testator, for many years
prior to her death, was an invalid and in ill health; that Hattie
Campbell kept house for, and waited upon, testator and his wife
for more than forty years and until their deaths; that neither Hattie
Campbell nor Iva Robinson had any means of support, and Hattie
Campbell was about fifty years of age at the time of the making of
the will; that testator, his wife, Iva Robinson, and his niece, Hattie
Campbell, constituted testator's family, and they all were kind and
affectionate toward each other; and that testator's brothers and
sisters did not visit with testator, nor he with them, during his
lifetime.

We are mindful that the statute of this State (Sec. 555, R. S.
1919) requires that "all courts . . . shall have due regard to
the directions of the will, and the true intent and meaning of the
testator, in all matters brought before them." But while the rule
of construction prescribed and laid down by the statute aforesaid
enjoins on us that we shall give effect to the directions of the will,
and the true intent and meaning of the testator, yet such rule of
construction is subject to the qualification that it must not con-
flict with any established and inflexible rule or requirement of
law. [Lemmons v. Reynolds, 170 Mo. 227, 234; Grace v. Perry,

197 Mo. 550, 559.] And, as we have heretofore said, there being no express declaration contained in the devise that the first takers or devisees named shall take the devise in joint tenancy, we must give effect to the inflexible rule or requirement of law prescribed by the statute (Sec. 2273, R. S. 1919), namely, that the estate devised shall be a tenancy in common. It follows therefrom that we cannot say that it was the intent of the testator that respondent, Hattie Campbell, as the surviving devisee, should take the whole devise, for and during her life, by reason of the death of the co-devisee, Iva Robinson.

But it is said by respondent, Hattie Campbell, that the term, "expressly declared," as used in Section 2273 of the statute, aforesaid, does not require the use of the precise term, or words, "joint tenancy," in declaring or creating such a joint tenancy, but that any other words which convey the same meaning and intent may be used in the devise to expressly declare a joint tenancy. It is therefore contended by said respondent that, by the use (in clause fifth of the will) of the language or expression, "all of the balance of my property, both real and personal, to have and to hold during their natural life, and at their death, the remaining property to be divided among my brothers and sisters," the testator thereby intended, and expressly declared, that the devisees or takers first named in the devise, Iva Robinson and Hattie Campbell, shall each have a life estate in the *whole* of the lands devised in said clause of the will, and that, in the event of the death of either devisee, the survivor shall take and enjoy a life estate in the *whole* of the lands devised. Hence, it is claimed that the testator clearly manifested the intention that the lands devised, or any part thereof, shall not be partitioned until the death of the last surviving life tenant (in this case, Hattie Campbell), and that our statute (Sec. 2005, R. S. 1919) specifically enjoins that "no partition or sale of lands, tenements or hereditaments, devised by any last will, shall be made . . . contrary to the intention of the testator, expressed in any such will." The contention of respondent is ingenious, but is not supported by judicial authority, so far as we find. On the other hand, judicial authority appears to be directly opposed to respondent's contention.

In Woolston v. Beck, 7 Stew. (34 N. J. Eq.) 74, 75, a testator devised his farm to his two daughters, Sarah Lippincott and Keziah Woolston, to use and enjoy the same during the term of their natural lives, Sarah Lippincott to have the benefit and profit arising from two-thirds thereof, and Keziah Woolston to have
At Their the benefit and profit arising from the other one-third
Death. thereof, and "after the decease of my two daughters," to their children in fee, in specified portions. Sarah Lippincott died leaving surviving children, and was survived by Keziah Woolston,

who claimed that she was entitled to the use and possession of the whole farm for life. Said the learned chancellor, in denying the claim of Keziah Woolston: "The estate given to Sarah and Keziah by the will is a tenancy in common, and there is therefore no survivorship. The statute would, if the property had been given to them for life in equal shares, forbid a construction which would hold that the estate is by implication a joint tenancy. It provides that no. estate, after the passing of the act (February 4, 1812), shall be considered to be an estate in joint tenancy, except it be expressly set- forth, in the grant or devise creating it, that it is. the intention of the parties to create an estate in joint tenancy, and not an estate of tenancy in common. [Rev. 167.] Keziah is not entitled to a life estate in the whole farm, but only in the one-third. The persons to whom the remainder is given became, on the death of Sarah, entitled to the possession of the other two-thirds. The fact that, by the language of the will, the remainder is to take effect on the death of the 'two daughters' will not, although only one of them is dead, prevent that construction. The words 'after the death of my two daughters' will be construed to mean after the death of the two respectively. A gift to A and B as tenants in common, for their lives, and 'at their deaths,' or 'at the death of A and B,' to their children, goes, on the death of each tenant for life, to his children." (Citing authorities.)

In a later case, Stoutenburgh v. Moore, 10 Stew. (37 N. J. Eq.) 63, 65, the will of testator provided: "All the rest and residue of my estate, real, personal and mixed, I give, devise and bequeath the income to my two sons, Robert and Edward, to be equally divided between them during their lives, and at their death, to be ·equally· divided between my· grandchildren, to them, their heirs and assigns." Robert survived his brother, Edward, who left surviving a widow and one child, the complainant in said suit. Robert claimed to be entitled to the whole of the income of the residue of testators' estate for his life, and that such residue of the estate was not divisible until his death. Said the chancellor therein: "The testator, by the will, gave the income of the residue to his two sons, to be equally divided between them during their lives. This made them tenants in common of the income, and they had no right of survivorship. [Woolston v. Beck, 7 Stew. Eq. 74; Wills v. Wills, L. R. (20 Eq.) 342.] Our statute provides that no estate . . . shall be considered and adjudged to be an estate in joint tenancy, except it be expressly set forth in the grant or devise creating such estate that it is intention of the parties to create an estate in joint tenancy, and not an estate of tenancy in common, any law, usage or decision theretofore made to the contrary notwithstanding. [Rev. p. 167.] Neither of the sons had a right, under

the will, to more than one-half of the income in any event, and when one of them died the principal was to be divided, for I am of opinion that by the term 'at their death' the testator meant at the death of them respectively, not at the death of the survivor. . . . The design of the testator and the scheme of the will were to provide, in the first place, for his sons for life, and then, as they should die, for their respective families of children. . . . He certainly intended that, at the respective deaths of his sons, the shares of the residue, of which he gave them respectively the income, should go over; for he directs that 'at their death,' by which he meant their respective deaths, the residue shall be divided between his grandchildren."

The same conclusion was reached in Collins v. Wardell, 65 N. J. Eq. 366, 370, wherein a testatrix directed her executors to set apart, out of the residue of her estate, "a fund sufficient to produce an income of $6,000 a year, and out of said income to pay to my brother, William Phyfe, $4,000 a year, and to my brother, Duncan Phyfe, $2,000 a year, for the terms of their natural lives, respectively, and after their death, I direct the capital of said fund to be divided equally" among certain named beneficiaries. William Phyfe, to whom the annuity of $4,000 was bequeathed, pre-deceased the testatrix, and the question before the chancellor was whether the capital of the fund, except so much thereof as would be required to produce and pay the annuity of $2,000 to the surviving brother, Duncan Phyfe, should be presently distributed to the named beneficiaries in the will. Said the chancellor, in ruling this question: "The direction of the testatrix . . . means that the capital fund is to be divided upon the respective deaths of the annuitants, the income having been paid to them for their respective lives. The words 'their death,' in the connection used, can mean only 'their respective deaths.' These words were not expressive of a single event, but of the death of each one; that is, their respective deaths. The cases seem to support the contention that where the income of a single fund is bequeathed to two or more persons for life, with remainder over 'after their death,' the courts construe these words to mean 'after their respective deaths,' and decree a present division of the fund and a distribution of the part thereof not required to produce income for the life tenants."

While counsel have not directed our attention to any decision of the courts of our own State touching the precise question, yet we are satisfied with the conclusions reached in the New Jersey cases herein cited and with the logic and reasoning upon which such conclusions were predicated. We are of opinion that the testator intended by the words "and at their death," in the connection in which those words were used in the fifth clause of the will, to say and to provide (and such words can only mean) "and after

their respective deaths." Hence, we think that the intent of the
testator is clearly manifest, as disclosed by the fifth clause of his
will, that division of the moiety or share devised to each of the
life tenants is to be made among the brothers and sisters of testa-
tor, and if any of testator's brothers and sisters be not living,
then to the children of such deceased brothers and sisters, at and
upon the respective death of each of the life tenants.

We cannot give sanction to the suggestion of respondent that
the devise was made to the life tenants, Iva Robinson and Hattie
Campbell, as a class of beneficiaries, and that Hattie Campbell takes
the whole devise for life as the surviving member of the class. In
**Devise to Class.** our opinion the devise was made to the life tenants as
named individuals, and not as a class of beneficiaries. The
distinction between a devise to a class and one to named
individuals is clearly expressed and stated in Estate of Hittell,
141 Cal. 432, 435, wherein a devise was made by testator to "Anna
P. Greer and Mary M. Greer, with whom I live, . . . and whom
I regard and treat as my adopted daughters." Said that court:
"Counsel for respondent, as we understand them, do not seriously
contend that the will creates the strict legal relation of joint tenancy.
But they contend that their client gets the whole estate, not as a sur-
viving joint tenant, but as the remaining person of a 'class.' Their
contention is, that the devise was to Anna and Mary as a class, and
that the case comes within the rule that where there is a devise to a
class, those of the class who are in existence at the death of the testator
take the whole estate. We think that this position is wholly untenable.
The devise in the case at bar is simply to two named individuals, and
there is no designation of a 'class,' within the meaning given that
word by the authorities. The statement that the devisees were persons
with whom he lived and treated as his adopted daughters is of no
significance, except perhaps as a reason given for his bounty.   A
common instance of a devise to a class is where a testator gives
property, generally to the 'children' of a certain person, without nam-
ing them—as, to 'the children of my brother John;' and in such a
case it is held that the devise is to such children of John as will be
in existence at the time of the testator's death. . . .   Therefore, in
the case at bar, even if a class had been named, the gift would have
been to the individuals, because there is nothing in the other parts
of the will, or in any extrinsic evidence, showing a different intent,
and there are no operative words creating any right of ownership.
But, as before stated, there was no class named; and this fact is an
insurmountable obstacle in the way of respondent's contention." The
same distinction seems to have been drawn by this Court en Banc, in
both the majority and minority opinions, in Lounden v. Bollam, 302
Mo. 490.

It remains for us to say whether the devise to testator's wife, Iva Robinson, lapsed by reason of her death before that of testator, or whether the testator intended to substitute his brothers and sisters, and the children, respectively, of such brothers and sisters **Lapse.** as may be dead, as beneficiaries of the devise in the event of the death of Iva Robinson before the death of testator. The general rule is that a legacy or devise will lapse where the legatee or devisee dies before the testator. [40 Cyc. 1925.] But it also appears to be the generally recognized rule that "a testator may, by express provisions of his will, prevent a lapse in case of the death of a legatee or devisee before the testator, and a lapse may also be prevented by implication, where the will shows a clear intention of the testator that the property shall go to the heirs of the legatee or devisee. A legacy or devise will not lapse where the testator has provided for a substitution or succession in case of the legatee's or devisee's death. Such a substitution is clearly implied by the use of the term 'or,' and therefore a legacy or devise to a particular person or his heirs will not lapse upon the death of the legatee before the testator." [40 Cyc. 1933-1935.] So, in Martin v. Lachasse, 47 Mo. 591, 593, it was said by WAGNER, J., speaking for this court: "It is a conceded principle, most clearly established, that a testamentary disposition will lapse by the death of the legatee during the life of the testator. And this rule equally applies to devises of real as to bequests of personal estate. This rule has been long settled and recognized (Brett v. Rigdon, Plowd. 340; 1 Rop. Leg. 320), and is often productive of hardship, and in some cases defeats the intention of the testator. But the doctrine will not be extended beyond cases falling strictly within it. Therefore, if a legacy or devise be given to one by name, and in the event of his death to another, the alternative gift will take effect if the first legatee or devisee die even in the testator's lifetime. This point was expressly adjudged in a very recent case (Martha May's Appeal, 41 Penn. St. 512). The law favors the vesting of estates, and will always hold them to vest, where it can be done consistently with legal principles and the manifest intent of the testator, in preference to declaring them lapsed. [Collier's Will, 40 Mo. 287.]"

Furthermore, the presumption is that a testator intended to dispose of his entire estate and not to die intestate, either as to the whole or as to any part thereof, and the will should be so construed unless this presumption is clearly rebutted by the provisions of the will or by evidence to the contrary. [40 Cyc. 1409; RoBards v. Brown, 167 Mo. l. c. 457; Watson v. Watson, 110 Mo. l. c. 171; Willard v. Darrah, 168 Mo. l. c. 670, 671.] The manifest intention of the testator herein appears to have been that his brothers and sisters, and the children of such brothers and sisters as may be dead, should

take, as substituted beneficiaries, the moiety or share of either of the devisees for life upon their respective deaths, whether such deaths should occur prior, or subsequently, to that of testator; at least, the will, by its terms, places no limitation upon their taking such moiety in the event of the death of either devisee for life before that of testator. But while we are clearly of opinion that the devise to Iva Robinson did not lapse, but passed to the substituted beneficiaries, the brothers and sisters of testator, and their descendants, nevertheless it would seem to make no difference in the instant case, as respecting the rights of the parties herein, whether the devise lapsed or whether it passed to the substituted beneficiaries. Testator died without issue and, under our Statute of Descents and Distributions (Sec. 303, R. S. 1919), the estate, if any, of which he died intestate, descends or passes to his brothers and sisters, and their descendants, in equal parts, unless it be that testator was survived by his father and mother. While there is no positive showing in the record herein that testator was not survived by father and mother, or either of them, yet the ages of the respective parties leads us to believe, and therefore to draw the inference, that testator was not survived by either father or mother, and hence his heirs at law are identical with the substituted beneficiaries provided for in his will.

We therefore reach the conclusion herein that the brothers and sisters of testator, and the children, respectively, of such brothers and sisters as may be dead, are clearly entitled to a present partition and distribution of the moiety or share of the lands and real property devised by the fifth clause of testator's will to his wife,

**Partition.** Iva Robinson, without awaiting the death of Hattie Campbell and the termination of her life estate. Any other conclusion, we think, would be in contravention of the existing statutory law of this State and contrary to the manifest intention and directions of testator as expressed in his will. It follows that the judgment of the circuit court is wrong, and it must therefore be reversed.

It is accordingly ordered herein that the judgment *nisi* be reversed, and that the cause be remanded to the circuit court with directions that the value of all the lands and real property devised by the fifth clause or paragraph of the will of testator, Thomas J. Robinson (including such devised lands and real property, if any, as may have been conveyed or otherwise disposed of by respondent, Hattie Campbell, or which she may have attempted to convey or otherwise dispose of), be first ascertained and determined; next, that there be set off to defendant Hattie Campbell, for her use and enjoyment during the term of her life, by metes and bounds or other definite legal description, a one-half part of said lands and real property, according to such ascertained and determined value of the whole thereof; and then that the remaining, or other, one-half part of said lands and

real property, according to such ascertained and determined value of the whole thereof, be partitioned in kind, if the same can be done without great prejudice to the parties in interest, among the brothers and sisters of the testator, share and share alike, and, if any such brothers and sisters of the testator be dead, then the share of any deceased brother or sister of testator shall go to the children, if any, of any such deceased brother or sister, *per stirpes;* and if the said one-half part (in value) of said lands and real property be not susceptible of partition in kind without great prejudice to the parties in interest, that the same be then sold according to law and that the proceeds of such sale be divided and distributed among the said parties, according to their respective rights and interests, as established by the proof and ascertained by the trial court. *Lindsay, C.,* concurs; *Ellison, C.,* not sitting.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur, except *Gantt, J.,* not sitting.