**Lula Wharton VAN HOOSE, individually and as Executrix of the Estate of Albert Buckman Wharton, Jr., Deceased, et al., Appellants,**

v.

**Killen M. MOORE, Trustee of a Trust created by the Will of Electra Waggoner, Deceased, et al., Appellees.**

No. 7890.

Court of Civil Appeals of Texas.

Amarillo.

May 5, 1969.

Rehearing Denied June 2, 1969.

Elton M. Hyder, Jr., Stone, Tilley, Parker, Snakard, Law & Brown, Thos. H. Law, Robert M. Randolph, W. Terry Gardner, McGown, Godfrey, Decker, McMackin, Shipman & McClane, Warren W. Shipman III, Kent D. Kibbie, Hardwicke & Pope, Alex Pope, Jr., Robert E. Hardwicke, Jr., Cantey, Hanger, Gooch, Cravens & Scarborough, Carlisle Cravens, Charles L. Stephens, Brown, Herman, Scott, Young & Dean, Beale Dean, Fort Worth, Pruitt & Hughes, Warren Pruitt, Ney Sheridan, Jr., Vernon, Hart & Hart, James P. Hart and Joseph H. Hart, Crawford C. Martin, Atty. Gen., Nola White, First Asst. Atty. Gen., Hawthorne Phillips, Executive Asst. Atty. Gen., W. V. Geppert, Houghton Brownlee, Jr., Scott Garrison, Asst. Attys. Gen., Austin, for appellants.

Edwin T. Phillips, Jr., McDonald, Sanders, Wynn, Ginsburg, Phillips & Maddox, J. Olcott Phillips, Atwood McDonald, and

George F. Christie, Day & Gandy, Joe Day, Jr., Fort Worth, Underwood, Wilson, Sutton, Heare & Berry, W. M. Sutton, Harlow Sprouse, Amarillo, Hudson, Keltner, Smith & Cunningham, Killough K. Smith, Jr., and Luther Hudson, Fort Worth, Jackson, Walker, Winstead, Cantwell & Miller, A. W. Walker, Jr., and D. L. Case, Dallas, for appellees.

DENTON, Chief Justice.

This is a suit by the trustee to construe the will and codicil of Electra Waggoner creating a testamentary trust. The trial court, sitting without a jury, held that Albert Buckman Wharton III, as the only "lawful issue" of Albert Buckman Wharton, Jr., was entitled to all of the assets of the Electra Waggoner Trust, including undistributed income. Extensive findings of fact and conclusions of law were filed by the trial court.

W. T. Waggoner and Ella Hassell Waggoner had three children who survived infancy: Electra, born in 1882; Guy L., born in 1883; and E. Paul, born in 1889. The W. T. Waggoner Estate, a common law trust, was formed March 31, 1923 by W. T. Waggoner and his three children above named. Each of the three children were issued 33,333⅓ shares of stock, constituting ⅓ of the W. T. Waggoner Estate. Electra Waggoner executed the will under consideration here on March 19, 1925 in New York City while married to James A. Gilmore. Her codicil was executed on June 1, 1925 in Fort Worth, Texas. Her marriage to Gilmore was dissolved by annulment on September 11, 1925 and her maiden name was restored. She died on November 26, 1925. Her will and codicil were duly probated in Wilbarger County, Texas. W. T. Waggoner served as executor without bond until the estate was closed on May 8, 1929. The residuary estate, consisting almost entirely of Electra's interest in the W. T. Waggoner Trust was distributed to W. T. Waggoner, as testamentary trustee of the Electra Waggoner Trust. Waggoner served as trustee until his death in 1934. His wife, Ella Waggoner, was appointed trustee and served until 1955. She was succeeded by E. Paul Waggoner, who was succeeded on Jan. 4, 1960 by Killen M. Moore, who has continued to serve in such a capacity, and is a party to this cause as trustee, and individually.

This multiple party suit involves many different claims, cross claims and counter claims. A brief statement of the history of the Waggoner family genealogy seems proper to clarify the position of the parties and their respective claims. Electra Waggoner married Albert Buckman Wharton, Sr. in 1902. They had two children born of this marriage: Thomas Waggoner Wharton, hereinafter called Tom, born on October 3, 1903; and Albert Buckman Wharton, Jr., hereinafter called Buster, born on August 8, 1909. Electra and Albert Wharton were divorced in 1921. She subsequently married Weldon M. Bailey in 1922. This marriage ended in divorce on January 6, 1925. Her marriage to James A. Gilmore on February 14, 1925 was dissolved by annulment on September 11, 1925, which decree also restored her maiden name. No children were born of Electra's last two marriages.

Guy Leslie Waggoner, oldest brother of Electra, was born September 21, 1883 and died December 11, 1950, leaving his residual estate to a testamentary trust. Guy had only one son who reached adulthood: W. T. Waggoner, Jr., born April 5, 1905. Two children were born of W. T., Jr.'s marriage to Elise Criss: Ella Jean Waggoner and Elise Criss Waggoner. One child was born of W. T., Jr.'s marriage to Mary Beth Wilson: Jacquelin Waggoner. Ella Jean Waggoner has two children by her marriage to Clarence James Coberly, Jr.: William Criss Coberly and Gary Parker Coberly, both minors. Elise Criss Waggoner, sister of Ella Jean Waggoner, has three children by her marriage to Edward Lee Hay: Edward Lee Hay, Jr., Lynn Diane Hay, and Leslie Hay, all minors. Jacquelin Waggoner, born August 3, 1948, of the marriage of W. T., Jr. and Mary Beth Wilson, is a minor and unmar-

ried at the time of the trial of this cause. W. T., Jr. died April 16, 1962. These named descendants of Guy Waggoner are beneficiaries of his testamentary trust. Ella Jean Waggoner McCaughey and her present husband, Hamilton E. McCaughey, are parties to this suit. Mrs. McCaughey has qualified as guardian of the estate of her two minor children, William Criss Coberly and Gary Parker Coberly, and is also a party in such capacity. Elise Criss Waggoner Hay and husband, Edward Lee Hay, are parties hereto along with Mary Beth Wilson, guardian of the estate of her minor daughter, Jacquelin Waggoner, in such capacity. Ney Sheridan, Jr., an attorney at law, is the duly appointed guardian ad litem representing the minor children of Elise Waggoner Hay: Edward Lee Hay, Jr., Lynn Diane Hay, and Leslie Hay. The only other beneficiary of the Guy L. Waggoner Trust, the University of Texas, a remote contingent remainderman, is a party to this suit and is represented by the Attorney General of Texas. For convenience, the Guy L. Waggoner descendants, trustees and trust beneficiaries will be referred to collectively as the "Guy Waggoner Group".

By order of the trial court on July 25, 1968, subsequent to the trial of this cause on the merits, the Republic National Bank of Dallas, the First National Bank of Fort Worth, and the Continental National Bank of Fort Worth were appointed co-trustees of the Guy L. Waggoner Trust in place of the Valley National Bank of Arizona. On the same date, in another cause, the Guy L. Waggoner Trust was divided into three separate trusts: The Jacquelin Waggoner Trust, with the Republic National Bank as sole trustee; The Jean Waggoner Trust, with the First National Bank of Fort Worth as sole trustee; and The Elise Waggoner Trust, with the Continental National Bank of Fort Worth as sole trustee. These trustees are before the court in the capacities indicated.

E. Paul Waggoner, the other child of W. T. Waggoner, Sr. and Ella Hassell Waggoner, was married to Helen Buck Waggoner in 1910. They had one child, Electra Waggoner, who married John Biggs in 1943. Paul died after the trial of this cause and pending this appeal. John Biggs and wife Electra Waggoner Biggs, as executors of the estate of E. Paul Waggoner, have been substituted as parties to this cause. For convenience, the descendants, trustees, and executors of the E. Paul Waggoner Estate will be referred to collectively as the ."Paul Waggoner Group".

Electra Waggoner was single when she died November 26, 1925 and was survived by her two sons, Tom, who died without issue, in 1928; and Albert Buckman Wharton, Jr., known as Buster, who died May 28, 1963 survived by a son, Albert Buckman Wharton III and an adopted daughter, Rita Lorena Wharton. Albert Wharton III, often referred to as "Bucky", reached his majority on October 1, 1968. Upon his motion, this court has confirmed his appearance in this cause as a party in his own right, with his guardian, LaRita Rohla, his mother, to continue as a party to this cause in such capacity until such time as she has been formally discharged as his guardian.

Although numerous issues are presented, the principal issue concerns the construction of the will and codicil of Electra Waggoner. The pertinent portions of the will are as follows:

"SECOND: I give and bequeath to JAMES A GILMORE, my husband, the sum of TWENTY FIVE THOUSAND DOLLARS ($25,000) to be his own absolutely and forever.

THIRD: All the rest, residue and remainder of my property of every kind and nature whatsoever, whether real, personal or mixed and wheresoever situate, in which I have any right or interest at the time of my

death or over which I have the right of disposal by power of appointment or otherwise, I give, devise and bequeath to my trustee hereinafter named in trust nevertheless to convert the same into money or to hold the same in the property or securities representing it at the time of my death as in his discretion may seem best, and to divide the same into two equal parts or shares:

**First Item**

ITEM: To hold one of the said two equal parts or shares in trust for the benefit of my son, TOM WAGGONER WHARTON, and to pay over monthly to him so much of the net rents, issues, income and interest thereof as my said trustee may, in the exercise of his sound judgment, deem advisable and proper, his decision to be final and conclusive on all persons interested in my estate, during the term of the natural life of my said son, and to pay over semi-annually during the life of my said son the balance, if any, of the said net rents, issues, income and interest equally to my two brothers, EDWARD PAUL WAGGONER and GUY L. WAGGONER or to the survivor of them, and in case they shall both die during the life of my said son, then to pay semi-annually, any balance of said net rents, issues, income and interest thereof to the persons next eventually entitled to the principal of said one-half part or share so held in trust under the terms and provisions of this my will.

**Second Item**

ITEM: Upon the death of my said son, TOM WAGGONER WHARTON, leaving lawful issue, then to pay over and distribute the principal of said one-half equal part or share to and among the lawful issue of my said son, to be divided among them per stirpes and not per capita. Upon the death of my said son, TOM WAGGONER WHARTON, leaving no lawful issue, then to pay the principal of said trust held for his benefit to the persons next eventually entitled under the provisions of this my will.

Upon the death of both of my said sons before me leaving no lawful issue or upon their death after my decease, leaving no lawful issue, then to pay over the principal of the said one-half part or share equally to my two brothers, EDWARD PAUL WAGGONER and GUY L. WAGGONER or to the survivor of them or in the event they both then be dead, to the lawful issue of my said brothers, per stirpes and not per capita.

**Third Item**

ITEM: To hold one of the said two equal parts or shares in trust for the benefit of my son, ALBERT BUCKMAN WHARTON, JUNIOR, and to pay over monthly to him so much of the net rents, issues, income and interest thereof as my said trustee may, in the exercise of his sound judgment, deem advisable and proper, his decision to be final and conclusive on all persons interested in my estate, during the term of the natural life of my said son, and to pay over semi-annually during the life of my said son the balance, if any, of said net rents, issues, income and interest equally to my two brothers EDWARD PAUL WAGGONER and GUY L. WAGGONER or to the survivor of them, and in case they shall both die during the life of my said son, then to pay semi-annually any balance of set net rents, issues, income and interest thereof to the persons next eventually entitled to the principal of said one-half part or share so held in trust under the terms and provisions of this my will.

**Fourth Item**

ITEM: Upon the death of my said son, ALBERT BUCKMAN WHARTON, JUNIOR, leaving lawful issue, then to pay over and distribute the principal of said one-half equal part or share to and among the lawful issue of my said son, to be divided among them per stirpes and not per capita. Upon the death of my said son, ALBERT BUCKMAN WHAR-

TON, JUNIOR, leaving no lawful issue, then to pay the principal of said trust held for his benefit to the persons next eventually entitled under the provisions of this my will.

Upon the death of both of my said sons before me leaving no lawful issue or upon their death after my decease, leaving no lawful issue, then to pay over the principal of the said one-half part or share equally to my two brothers, EDWARD PAUL WAGGONER and GUY L. WAGGONER or to the survivor of them or in the event they both then be dead, to the lawful issue of my said brothers, per stirpes and not per capita.

FOURTH: I hereby give my executor and trustee hereinafter named, his successor or successors, full power and authority as soon as or when in his judgment he shall deem it best so to do, to sell at public or private sale all or any portion of my real or personal property and to convert the same into cash for the purpose of carrying out the provisions of this my will.

I hereby expressly authorize my executor and trustee, however, to retain and hold any part of my estate and the trust funds created thereunder in the property, stocks, bonds or other securities or in the investments which I may have at the time of my death."

We have designated the "Item" paragraphs by number for more convenient reference. Her codicil reads in full:

"STATE OF TEXAS ⎱
COUNTY OF TARRANT ⎰

I, ELECTRA WAGGONER GILMORE, hereby make, publish and declare this codicil to my last will and testament dated March 19, 1925, this codicil being attached thereto:

FIRST: I cancel, rescind and annul Section 2 of said will wherein I bequeath to JAMES A. GILMORE, my husband, the sum of Twenty-five Thousand ($25,000.00) Dollars. It is my will and wish that he shall receive ~~nothing~~.
 one dollar.

SECOND: I annul that part of the First Item of Section Third of my will wherein it is provided that any excess income shall be paid over to my two brothers, EDWARD PAUL WAGGONER and GUY L. WAGGONER, and I now direct that such excess income shall be and continue as a part of the estate in trust of my said son TOM WAGGONER WHARTON during the term of his natural life, to be held under the same trust as is provided in my original will for the other estate bequeathed to him thereby. If at the death of my said son TOM WAGGONER WHARTON he shall not leave lawful issue surviving, then at his death the estate hereby bequeathed to him shall go to my son ALBERT BUCKMAN WHARTON, JUNIOR, under the provisions of the trust created as to his other property herein; but if my said son ALBERT BUCKMAN WHARTON, JUNIOR, shall not survive my said son TOM WAGGONER WHARTON, then at the death of said TOM WAGGONER WHARTON the estate herein devised to him shall go to and vest in my two brothers, EDWARD PAUL WAGGONER and GUY L. WAGGONER, or to the survivor of them.

THIRD: I annul that part of the Third Item of Section Third of my will wherein it is provided that any excess income shall be paid over to my two brothers, EDWARD PAUL WAGGONER and GUY L. WAGGONER, and I now direct that such excess income shall be and continue as a part of the estate in trust of my said son ALBERT BUCKMAN WHARTON, JUNIOR, during the term of his natural life, to be held under the same trust as is provided in my original will for the other estate bequeathed to him thereby. If at the death of my said son ALBERT BUCKMAN WHARTON, JUNIOR, he shall not leave lawful issue surviving, then at his death the estate hereby bequeathed to him shall go to my son TOM WAGGONER WHARTON under the provisions of the trust created as to his other property herein; but if my said son TOM WAGGONER WHARTON shall not survive my said son ALBERT BUCKMAN WHARTON, JUNIOR, then at the death of said ALBERT BUCKMAN WHARTON, JUNIOR, the estate herein devised to him shall go to and vest in my two brothers, EDWARD PAUL WAGGONER and GUY L. WAGGONER, or to the survivor of them.

FOURTH: It is my wish and will that the trust created by my said original will be continued in effect and applied to all changes in devises and bequests as made by this codicil; the purpose hereof being to change the devisees in the way and extent here shown, but not to in any way change or disturb the trust created by my original will, but as to this the purpose is to keep the property going to the devisees and the beneficiaries in the say here shown under the trust, in the same way and to the same extent as applied to the estate bequeathed, such beneficiaries respectively by my original will.

FIFTH: Except as changed and modified by this codicil my original will is to continue in effect in all respects, and subject to the changes here made is ratified, confirmed and approved by me.

IN WITNESS WHEREOF, I, ELECTRA WAGGONER GILMORE, have to this codicil to my Last Will and Testament, subscribed my name and affixed my seal this the 1st day of ~~May~~, A.D. 1925."

June

———◆———

In construing the two testamentary instruments, we think it appropriate to refer to several cardinal rules of construction we are to follow. It is the duty of the court to determine the intention of the testator; and if that intention is not clearly expressed by the particular language used, it may be determined by looking to the will as a whole, and to the circumstances surrounding its execution. Haile v. Holtzclaw, 414 S.W.2d 916 (Sup.Crt.). Bergin v. Bergin, 159 Tex. 83, 315 S.W.2d 943. Guilliams v. Koonsman, 154 Tex. 401, 279 S.W.2d 579, 57 A.L.R.2d 97. Another well established rule of construction is that every presumption is against intestacy, and if the will is open to two constructions, the interpretation will be given it which will prevent intestacy. Ferguson v. Ferguson, 121 Tex. 119, 45 S.W.2d 1096. Crowley v. Vaughan (Tex.Civ.App.) 347 S.W.2d 12 (Error Ref.). However, the last stated rule must yield to a construction which results in partial intestacy when the testator has failed, by design or otherwise, to make a complete disposition of his property. Carr v. Rogers, 383 S.W.2d 383 (Sup.Crt.). Fain v. Fain (Tex.Civ.App.) 335 S.W.2d 663 (Writ Ref.). Another well settled rule which is applicable here is that a properly

executed and valid codicil, which contains a sufficient reference to a prior will, operates as a republication of the will insofar as it is not altered or revoked by the codicil; and the will and codicil are then to be construed as one instrument speaking from the date of the codicil. Hinson v. Hinson, 154 Tex. 561, 280 S.W.2d 731. Boyd v. Frost National Bank, 145 Tex. 206, 196 S.W.2d 497. Newsome v. Carpenter (Tex. Civ.App.) 382 S.W.2d 350 (Ref. N.R.E.). Aven v. Green, 159 Tex. 361, 320 S.W.2d 660.

The claims, counter claims and alternative contentions of the various parties and groups of parties are numerous and somewhat involved. They are briefly stated as follows:

Albert Buckman Wharton III, appearing herein by and through his mother and the general guardian of his estate, La-Rita Rohla, claims all of the assets of the Electra Waggoner Trust as the sole and only lawful issue of Albert Buckman Wharton, Jr.

Lula Judd Wharton Van Hoose, individually and as Independent Executrix of the Estate of A. B. Wharton, Jr., claims:

(1) The principal of the one-half share originally bequeathed for the benefit of A. B. Wharton, Jr. by application of the Rule in Shelley's Case.

(2) The principal of the one-half share originally bequeathed for the benefit of Tom Waggoner Wharton under three alternative theories, including application of the Rule in Shelley's Case.

(3) Three-fourths of the principal of the one-half share originally bequeathed for the benefit of Tom Waggoner Wharton, under a theory of partial intestacy.

(4) All sums classified or classifiable as undistributed income of the Electra Waggoner Trust prior to the death of A. B. Wharton, Jr., on three alternative theories.

Rita Lorena Wharton, appearing herein at the time of trial through her guardian, City National Bank in Wichita Falls, Texas, claims one-half of the assets of the Electra Waggoner Trust as a lawful issue of Albert Buckman Wharton, Jr., by reason of her adoption by him in 1959.

Edward C. Maxwell, sole executor of the Estate of A. B. Wharton, Sr., and Naomi Ruth Wharton, claim one-fourth of the principal of the share originally bequeathed for the benefit of Tom Waggoner Wharton, under the same theory of partial intestacy asserted by Lula Judd Wharton Van Hoose.

The Guy L. Waggoner Trust and its beneficiaries claim one-half of the share originally bequeathed for the benefit of Tom Waggoner Wharton, on the theory that the remainder interest in such share vested in Guy L. Waggoner and E. Paul Waggoner on the death of Tom Waggoner Wharton without issue in 1928, but subject to a trust for the benefit of A. B. Wharton, Jr. during his lifetime.

E. Paul Waggoner, who supports the claim of Albert Buckman Wharton III but in the event that such claim is not sustained, alternatively claims one-fourth of all of the assets and property of the Electra Waggoner Trust, one-fourth of all income of the trust since the death of Tom Waggoner Wharton in 1928 and all accumulated undistributed income of the trust, as well as any interest to which he might be entitled under any construction asserted by any other party and ultimately adopted.

Electra's will was prepared by two New York lawyers and executed in New York City while she was married to James A. Gilmore. In April or May of 1925, shortly after the execution of her will, Electra separated from Gilmore. She filed suit for the dissolution of her marriage to Gilmore in Wilbarger County on May 26, 1925, a few days before the execution of the codicil to her will on June 1, 1925 in Fort Worth. The marriage was annulled by fi-

nal judgment of the District Court of Wilbarger County on September 11, 1925. The judgment of annulment restored Electra's maiden name, and found and determined the State of Texas was the matrimonial domicile of the marriage of Electra and Gilmore and that she was a resident of Wilbarger County, Texas. Electra, who died on November 26, 1925, was survived by her two sons, Tom and Buster. Tom died intestate on October 8, 1928, without leaving a widow or lawful issue surviving. He was survived by his father, Albert Wharton, Sr. and his brother, Buster. Albert, Sr. died on August 14, 1963. Edward Maxwell qualified as sole executor of his estate and is a party to this suit in such capacity. Naomi Wharton, widow of Albert, Sr., is the residuary devisee of his estate and is a party to this cause. Albert Wharton, Jr., or Buster, survived Tom and died May 28, 1963. He was survived by one natural child, Albert Buckman Wharton III, known as Bucky, who was born October 1, 1947. Buster's marriage to LaRita Rohla in 1943 ended in divorce in 1948. She is the natural mother and duly appointed guardian of Albert Buckman Wharton III. Buster married Lula Judd Link in 1949 and they remained married throughout the lifetime of Buster. Lula Wharton had one child, Rita Lorena Link, by her prior marriage. Rita was born November 15, 1945 and was formally adopted by Buster on December 21, 1959. Following her adopted father's death, the City National Bank of Wichita Falls was appointed guardian of her estate, and is a party to this cause in such capacity. Subsequent to the trial, Rita became twenty-one and she has entered her appearance as a party in her own right.

In construing the will and codicil, we will be guided by the well established cardinal rules of construction enumerated above. However, there are a few areas of general agreement by the parties. The Electra Waggoner will and codicil here in issue created a trust in her residuary estate for her two sons, Tom and Buster, in equal shares, with the income from each one-half payable to the named son during his lifetime, with distributions to the sons at the discretion of the trustee. All parties seem to agree that upon the death of Tom in 1928, without issue, the one-half that had been set aside in trust for him was subject to the right of Buster, who survived him, to receive income at the discretion of the trustee from both halves during his lifetime. It is further agreed that no one had a possessory right to the corpus set aside for Tom's use until the death of Buster on May 28, 1963. At the death of Buster, the trust that was created by Electra terminated as to both halves.

In light of the established rules of construction we will examine the will and codicil and determine the intention of the testatrix from the language she used in these two instruments. Section Third of the original will created a trust of her residuary estate to be divided in two equal parts for the benefit of each of her two surviving sons. The provisions made for each son are identical, word for word, in both the will and codicil. However, the facts as they developed with respect to the two sons are different in that Tom died without issue and Buster survived Tom and the former died leaving issue. The first item of Section Third and the third item of that same section granted to each named son income for life from his one-half share. Only an income interest is granted to each son by the will and codicil, and this income interest is specifically limited to the term of the son's natural life. The first and third items of Section Third specifically direct the trustee to pay over to Tom and Buster so much of the income as the trustee "in the exercise of his sound judgment deems advisable and proper". The balance, if any, of this income was to be paid over semi-annually to Electra's two brothers, Paul and Guy Waggoner.

The trial court found, and there seems to be no disagreement to this finding, that in 1925 New York statutory law provided that the accumulation of rents and profits

of real property or accumulation of income from personal property was void. It seems clear the New York draftsman of the original will was complying with the New York law by avoiding an accumulation of the income from Electra's estate. There was no such prohibition in Texas in 1925 against the accumulation of income by a trustee. It is clear that the Texas attorneys who drafted the codicil changed this feature of the will, reflecting the difference between the New York law and Texas law. The first sentence of the second section of the codicil specifically annuls that part of the will dealing with the distribution of excess income. That provision of the codicil provides: "I now direct that such excess income shall be and continue as a part of the estate in trust of my said son Tom Waggoner Wharton during the term of his natural life, to be held under the same trust as is provided in my original will for the other estate bequeathed to him thereby." This identical provision is found in the third section relating to Buster. These provisions of the codicil effectively allowed the trustee to accumulate income and eliminated the distribution of such accumulated income to Electra's two brothers. Such excess income "shall be and continue as a part of the estate in trust" of the two sons "during the term of his natural life". It is to be noted the trustee's discretion in · determining the amount of income to be distributed monthly to the sons was not altered or limited by the codicil.

 We now examine the will and codicil relative to the devise of the principal or corpus of Electra's estate. The fourth item of Section Third of the will relates specifically to the principal of the one-half share held in trust for Buster. Except for an alternative claim by the Van Hoose Group, it is conceded this first sentence of the fourth item conferred title of his share of the principal upon the lawful issue of Buster. The Van Hoose Group asserts in an alternative claim that the Rule of Shelley's Case vested fee simple ti-

tle to the property of the Electra Waggoner Estate in Buster. The contention is the language leaving the remainder to the "lawful issue" of Electra's son Buster invokes the Rule of Shelley's Case and results in the fee title to Buster's one-half share vested in Buster. For the Rule in Shelley's Case, which was in effect at the time of Electra's death in 1925, but abolished in 1963 by the Texas Legislature, to be applicable to convert "lawful issue" into heirs generally, the testator must have intended to use such words in their technical sense of "heirs" so as to pass from person to person through successive generations. Sybert v. Sybert, 152 Tex. 106, 254 S.W.2d 999. Hancock v. Butler, 21 Tex. 804. The Supreme Court, in *Hancock*, held the same phrase, "lawful issue", were words of purchase and not of limitation and held the Rule of Shelley's Case was not applicable. See also Hopkins v. Hopkins, 103 Tex. 15, 122 S.W. 15. We hold the Rule in Shelley's Case does not apply to Electra Waggoner's will. It is clear the term 'lawful issue' is not a limitation over to the life tenant's heirs or the heirs of his body as a class of persons to take in succession from generation to generation. Wallace v. First National Bank of Paris, 120 Tex. 92, 35 S.W.2d 1036. Donald v. Troxell (Tex. Civ.App.) 346 S.W.2d 398 (Ref.N.R.E.). The term "lawful issue" is a means of designating the persons who are to take as remaindermen at the death of Electra's son Buster. Robinson v. Glenn, 150 Tex. 169, 238 S.W.2d 169; Finley v. Finley (Tex. Civ.App.) 318 S.W.2d 478; N.R.E., 159 Tex. 582, 324 S.W.2d 551. Being of the view the Rule of Shelley's Case has no application, we are of the opinion the fourth item of Section Third of the will conferred title to Buster's share of the principal of Electra's estate upon Buster's lawful issue, per stirpes.

The Van Hoose Group and the Guy Waggoner Group contend the second item of Section Third of the will relates to Tom's share of the principal and that the codicil relates only to income. All parties

agree the first sentence of the second item is inoperative because Tom died leaving no lawful issue. The Van Hoose Group further contends the third sentence of the second item is also inoperative because it was a devise of Tom's share of the principal "upon the death of both my sons before me leaving no lawful issue or upon their death after my decease, leaving no lawful issue", since the facts are Tom died after Electra, leaving no lawful issue and Buster died thereafter, leaving lawful issue. They say Tom's share of the principal is devised by the second sentence of the second item which reads: "upon the death of my said son, Tom Waggoner Wharton, leaving no lawful issue, then to pay the principal of said trust held for his benefit to the persons next eventually entitled under the provisions of this my will." Their position is Tom's share of the principal goes to Electra's heirs and next of kin, determined as of the date of Tom's death without issue; that such heirs or next of kin "then" being "the persons next eventually entitled" to her property; that under the laws of dissent and distribution, Buster was Electra's only heir and as such, Buster took a vested remainder in the principal of Tom's share, subject to this share being held in trust for his benefit during his life under the income provisions of the codicil. Since Buster died with issue, they contend the remainder which Buster took in Tom's share upon the latter's death without issue was not divested and is now a part of Buster's estate recoverable by his executrix, Mrs. Van Hoose and those claiming under her in this suit.

The Guy Waggoner Group's interpretation of the second item of Section Third differs somewhat. They contend the second sentence of this item applies and directs that on the death of Tom without issue, his share of the principal shall go to "the persons next eventually entitled under the provisions of this my will". However, their contention then departs from that of the Van Hoose Group, when they say the third sentence of the second item spells out the "persons next eventually entitled" to take under those circumstances. Their position in the first part of the third sentence does not apply as both sons survived Electra, but the next part of the sentence does apply. They say "their death after my decease" means "their respective deaths" or singular, and that when Tom died without issue his one-half share of the principal shall go equally to Electra's two brothers, Paul and Guy Waggoner. The Paul Waggoner Group's alternative claim is substantially the same.

The appellees, including LaRita Rohla as guardian, and Albert Wharton III, individually, the W. T. Waggoner Estate and the Paul Waggoner Group, place another interpretation on this section of the will. It is their position the third sentence of the second item gives a remainder interest in the principal to Electra's two brothers or their issue *only* in the event both her sons die without lawful issue surviving. That is, this provision of the will makes a clear bequest to Paul and Guy under two conditions: (1) that they survive Tom and Buster, and (2) that both Tom and Buster died leaving no lawful issue. The latter condition did not occur as Buster died leaving lawful issue. Appellees concede the second sentence of the second item is by no means clear. Their position is it has no well defined legal meaning and in effect says "upon the death of said son without lawful issue, the payment of principal is to be governed by the provisions of this my will". They say this provision does not make an express bequest to any one person or persons although it recognizes that a disposition of principal is needed to be made in the event of the death of only one son without issue; that the provision in the last paragraph of the second item which disposes of the principal to Paul and Guy, if both sons die without leaving issue surviving, did not occur. Although appellees do not contend there is a partial intestacy under the will taken alone, they seem

to say there is an implied intestacy as to Tom's share of the principal, but that the codicil closes this implied gap.

The second item of Section Third specifically governs the disposition of Tom's share of the principal. Although the language is identical to that used in the fourth item relating to Buster's share of the principal, the facts as developed differ in that Tom died without issue. This fact brings into play different provisions of the second item than those considered in determining the devise to Buster, who died leaving issue.

 The will and the codicil are to be construed as one instrument. A will may be revoked wholly or in part by expressed language or by necessary implication of the latter testamentary instrument by making a different and contrary disposition of identical properties. Laborde v. First State Bank and Trust Company (Tex.Civ.App.) 101 S.W.2d 389 (Error Ref.). Haynes v. Henderson (Tex.Civ. App.) 345 S.W.2d 857 (Ref.N.R.E.). The intention of the testator to effect such revocation by implication must be shown in clear and unambiguous language.

The second section of the codicil expressly annuls that part of the first item of Section Third of the will wherein it provides for the distribution of excess income devised to Tom. The controversy here centers around the language in the second sentence of the second section of the codicil. This sentence provides "If at the death of my said son TOM WAGGONER WHARTON he shall not leave lawful issue surviving, then at his death the estate hereby bequeathed to him shall go to my son ALBERT BUCKMAN WHARTON, JUNIOR, under the provisions of the trust created as to his other property herein."

The first sentence of the second item is not applicable for the reason Tom died leaving no lawful issue. The second and third sentences of the second item provides:

" * * * Upon the death of my said son, TOM WAGGONER WHARTON, leaving no lawful issue, then to pay the principal of said trust held for his benefit to the persons next eventually entitled under the provisions of this my will.

Upon the death of both of my said sons before me leaving no lawful issue or upon their death after my decease, leaving no lawful issue, then to pay over the principal of the said one-half part or share equally to my two brothers, EDWARD PAUL WAGGONER and GUY L. WAGGONER or to the survivor of them or in the event they both then be dead, to the lawful issue of my said brothers, per stirpes and not per capita".

 The second sentence refers to the devise of Tom's share of the principal in the event Tom died leaving no lawful issue. This condition did occur, however the provision made no express disposition of Tom's interest in the principal. It devised such interest in that event "to the persons next eventually entitled under the provisions of this my will". This item does not stop here. The next sentence provides "Upon the death of both of my said sons before me leaving no lawful issue or upon their death after my decease, leaving no lawful issue, then to pay over the principal * * *". The clear intention of the testatrix in using this language is to pay over Tom's share of the principal to Electra's brothers, Guy and Paul or to the survivor or to their lawful issue if both brothers be dead, only in the event *both* Tom and Buster died *before* Electra leaving no lawful issue or *both* sons died *after* Electra leaving no lawful issue. (Emphasis added). Neither condition did in fact occur. Neither son died before Electra and Tom died without issue and Buster died thereafter with lawful issue. Some of the appellants forcibly argue "their death" means "their respective deaths" or singular, and

that since Tom did in fact die without issue, Tom's interest in the principal vested in Guy and Paul at Tom's death. Numerous cases are cited from other jurisdictions which support this contention. These include: Collins v. Wardell, 65 N.J.Eq. 366, 54 A. 417 (1903). Clapper v. Clapper, 246 Iowa 899, 70 N.W.2d 145 (1955). Dills v. Deavors (Kentucky Ct.App.1953) 266 S. W.2d 788. However, we think "their death" must be read in the context in which it is found in this will. The phrase "their death" relates to "both of my said sons" and refers to both of their deaths before and after Electra's death leaving no lawful issue. This provision imposes one of two conditions or contingencies which must occur before Tom's share of the principal vests in Guy and Paul: (1) both sons must predecease Electra leaving no lawful issue, or (2) both sons must die after Electra leaving no lawful issue. Neither contingencies did in fact occur. Tom died without issue and was survived by Buster with issue. The result is the third sentence of the second item did not become operative. The question then is, what is the meaning or effect of the second sentence of this item upon Tom's share of the principal? Clearly it made no express disposition of this interest. We must therefore look to "the provisions of this my will" to determine "the persons next eventually entitled" to Tom's share of the principal. As stated, the third sentence of this item is inoperative for the reasons we have previously given. Nor does any other item or section of the original will attempt to make a disposition of Tom's share of the principal.

■ We will therefore examine the codicil to determine the effect, if any, it may have upon the disposition of Tom's share of the principal. When a codicil is involved, it must be considered along with the will, that is, both instruments will be considered as one instrument. Hinson v. Hinson, 154 Tex. 561, 280 S.W.2d 731; Baker v. Wright (Tex.Civ.App.) 157 S.W. 2d 470 (Writ Ref.). The first sentence of the SECOND SECTION of the codicil expressly annuls that part of the FIRST ITEM of SECTION THIRD of the will which provides that any excess income should be paid over to Guy and Paul. The codicil directs that such excess income "shall be and continue as a part of the *estate in trust* for Tom during his natural life. (Emphasis added). Clearly the trustee was to hold the excess income under the same trust as provided for in the will and continue to pay over money monthly to Tom only "so much" of the income as the trustee deemed advisable. The only change as to income was the change to permit the accumulation of income. The excess, if any, was "a part of the estate" held in trust for Tom. The second sentence of SECTION SECOND of the codicil reads:

"If at the death of my said son TOM WAGGONER WHARTON he shall not leave lawful issue surviving, then at his death the estate hereby bequeathed to him shall go to my son ALBERT BUCKMAN WHARTON, JUNIOR, under the provisions of the trust created as to his other property herein; but if my said son, ALBERT BUCKMAN WHARTON, JUNIOR, shall not survive my said son TOM WAGGONER WHARTON, then at the death of said TOM WAGGONER WHARTON the estate herein devised to him shall go to and vest in my two brothers, EDWARD PAUL WAGGONER and GUY L. WAGGONER, or to the survivor of them."

The language of the codicil refers only to the FIRST ITEM of SECTION THIRD of the will, yet further language in that section makes it clear it was the intention of Electra to provide for the event which was not specifically set out in the will, to-wit: a disposition of a son's share of the principal after his death without issue, but survived by the other son. This language of the codicil evidences a change insofar as the disposition of Tom's share of the principal in the event of his death

without issue and survived by Buster. A codicil need not specifically refer to a certain provision in a previous will to effect a change in the will if the codicil shows a clear intent to change certain provisions of the will. Long v. Long (Tex.Civ.App.) 252 S.W.2d 235 (Ref.N.R.E.); Cruse v. Reinhard (Tex.Civ.App.) 208 S.W.2d 598 (Ref.N.R.E.).

■■■ By her codicil Electra directed the income not paid over to Tom "shall be and continue as a part of the estate in trust" for Tom during his lifetime. This estate was to be held by the trustee under the same provisions set out in the will. This excess income was to remain in the trust, subject to the terms of the trust during Tom's life. The discretionary powers of the trustee were not changed by the codicil. Appellants contend this "estate" bequeathed to Tom in the codicil was not principal but was income only. We do not think such a narrow construction of the word "estate" reflects the intention of the settlor. The Court in Ellet v. McCord (Tex.Civ.App.) 41 S.W.2d 110 (Writ Ref.), held: "The word 'estate' means property, and 'property' means estate, and, unless otherwise limited, the use of these words in a will ordinarily embraces and comprehends property of every description." Both the words "estate" and "property" were used by Electra in both her will and codicil. They are used interchangeably. The excess income became a part of Tom's "estate" until his death. All parties agree this "estate" was an interest in income for life at the trustee's discretion. Neither Tom nor Buster received any interest in the principal. At Tom's death, leaving no lawful issue, his "estate hereby bequeathed" went to Buster "under the provisions of the trust created as to his other property herein". Upon Tom's death, Buster received the same interest that Tom had, that is, an interest for life from both shares of the estate, subject to the discretion of the trustee. Buster held this interest he received from Tom in addition to his own interest "under the provisions of

the trust created as to his other property herein".

The FOURTH SECTION of the codicil declared the wish of the testatrix to be "not to in any way change or disturb the trust created by my original will" but "to change the devisees in the way and extent here shown". Both the will and codicil clearly expressed a preference of the testatrix for her sons' issue over her collateral heirs as they gave a remainder interest to her brothers or their issue only in the event both sons died without lawful issue surviving. As the holder of both shares of Electra's "estate" upon Tom's death, Buster was to receive the income from the whole estate during his life subject to the trustee's discretion. Tom's interest in the trust estate became Buster's trust estate under the provisions of the will.

The second sentence of the SECOND SECTION of the codicil was clearly intended to be an additional gift to Buster. This devise is commonly referred to as "cumulative legacy". 6 Page on Wills, Section 58.1, page 361. Under such conditions, Page on Wills gives the general rule as follows: "If a legacy or a devise is given as an addition to a prior legacy or devise, the additional legacy or devise is upon the same terms and conditions as the original legacy or devise, unless the provisions of the latter instrument show a contrary intention, or unless such condition will defeat the intention of the testator, as manifest from the two instruments when taken together." Page on Wills, Section 58.7, page 372. See also 57 Am. Jur., Wills, Section 610, p. 418. No Texas cases are directly in point, but respectable authority for this rule of construction is found in other jurisdictions. See Moore's Estate, 347 Pa. 276, 32 A.2d 12; In Re: Salmonski's Estate, 38 Cal.2d 199, 238 P.2d 966; Creech v. McVaugh, 140 N.J.Eq. 272, 54 A.2d 443.

■■■ It is evident Electra intended to prevent intestacy and added this gift to Buster by the specific terms of the codicil.

This gift was to be taken under the same terms and conditions as the original legacy to him. The estate thus devised to Buster was subject to all the conditions and limitations creating the trust and the remainder interest in principal of both shares of Electra's estate passed to Buster's lawful issue surviving.

We must next determine the ownership of the accumulated income from the estate which accumulated up to May 28, 1963, the day of Buster's death. The trial court found the testatrix intended to leave to each son a life interest only in the income, payable solely at the discretion of the trustee; and that upon the death of her son Tom without issue surviving, followed by the death of Buster, leaving issue, the undistributed income from both shares of the trust should pass upon Buster's death to Buster's lawful issue surviving, per stirpes. The court's numerous conclusions of law embraced these findings of fact. To repeat, the material parts of the will concerning the gift of income to Tom in the first *item* Section Third reads: "To pay over monthly to him so much of the net rents, issues, income and interest thereof as my said trustee may, in the exercise of his sound judgment, deem advisable and proper, his decision to be final and conclusive to all persons interested in my estate, during the term of the natural life of my said son." As previously stated, the next sentence dealing with excess income to be paid to Electra's brothers, Guy and Paul, was specifically annulled by the codicil in the following language: "I annul that part of the First Item of Section Third of my will wherein it is provided that any excess income shall be paid over to my brothers, EDWARD PAUL WAGGONER and GUY L. WAGGONER * * *". The codicil then continues "and I now direct that such excess income shall be and continue as a part of the estate in trust of my said son TOM WAGGONER WHARTON during the term of his natural life, to be held under the same trust as is provided in my original will for the other estate bequeathed to him thereby."

The Van Hoose Group takes the position the codicil gave beneficial title to Buster in the income earned during his life and the trustee had no power to deprive Buster or his estate of such title by failing to distribute all the income during Buster's life; and the trustee had exercised his discretion to pay the undistributed income to Buster before his death although payment had not actually been made. The argument is all undistributed income was held by the trustee for Buster's benefit during his lifetime, and at Buster's death this accumulated income became the property of his estate and did not go to Buster's surviving issue. LaRita Rohla, as guardian of the estate of Albert Wharton III and the other appellees take the position the will and codicil created a discretionary trust, one in which the trustee's discretion as to payment or nonpayment of trust income is limited only by his sound and conclusive judgment; and that subject to such discretion the undistributed income passes to the lawful issue of the testatrix's son upon the termination of the trust.

The Restatement of Trusts 2d, Section 155, reads:

"Discretionary Trusts

Except as stated in Section 156, if by the terms of a trust it is provided that the trustee shall pay to or apply for a beneficiary only so much of the income and principal or either as the trustee in his uncontrolled discretion shall see fit to pay or apply, a transferee or creditor of the beneficiary cannot compel the trustee to pay any part of the income or principal."

Section 156 referred to relates to cases where the settlor is a beneficiary and is not applicable here. See also Bogert, The Law of Trusts and Trustees, second edition, Section 228.

██ The will granted each of Electra's sons only an income interest for life. The trustee was to pay each son monthly during each son's life "so much of the net

* * * income * * * as my said trustee may, in the exercise of his sound judgment, deem advisable and proper, his decision to be final and conclusive on all persons interested in my estate." The codicil changed only the will provision which related to the accumulated income. It made no change in the trustee's discretion to "pay over" the income to the two sons, although the effect of the codicil was to permit the trustee to accumulate income by not being required to pay over the balance of undistributed income to Electra's two brothers semi-annually. The clear intention of the will and codicil was to create a discretionary trust. The settlor created a trust which vested in the trustee the discretion to pay over only "so much" of the income as the trustee saw fit. Tom and Buster were the income beneficiaries and such beneficiaries' interest was limited to their lifetime. A testatrix has a legal right to devise her property as she sees fit and to prescribe terms upon which her bounty should be enjoyed. State of Texas v. Rubion, 158 Tex. 43, 308 S.W.2d 4. Adams v. Williams, 112 Tex. 469, 248 S.W. 673. It is difficult to comprehend more broadly stated discretionary powers than were given to the trustee by Electra. The sons were not given an absolute right to demand and receive all the income from his share of the trust estate, and the amount to be paid over to each of the sons depended upon the "sound judgment" of the trustee.

■ The question then is what disposition is to be made of the accumulated income under this discretionary trust, in the absence of a specific devise, upon the death of a beneficiary for life. II Scott, The Law of Trusts, third edition (1967) Section 128.3 reads as follows:

"DISCRETIONARY TRUSTS. Where by the terms of the trust it is provided that the trustee shall pay to or apply for a beneficiary only so much of the income and principal or either as the trustee in his discretion shall see fit to pay or apply, the extent of the interest of the beneficiary depends upon the manifestation of the intention by the settlor. The beneficiary is not entitled to the entire beneficial interest in the trust property unless the settlor manifested an intention that he should have it. In such a case he is entitled only to the amount which the trustee, in the proper exercise of his discretion, decides to give him.

Where by the terms of the trust the trustee has discretion whether or not to pay the income to the beneficiary, and the beneficiary dies, his executor or administrator is not entitled to income which accrued prior to his death even though income had been received and accumulated by the trustee. Since it rested wholly within the discretion of the trustee whether and how much of the income should be paid to the beneficiary, and the beneficiary himself could not have compelled the trustee to pay the income to him, his personal representative certainly could not compel the trustee to pay over the income."

We think this rule of law applies to Electra's trust relative to the disposition of the accumulated income. This general principle of trust law was followed in Hughes v. Jackson (Comm.App.) 125 Tex. 130, 81 S. W.2d 656 (opinion adopted). That case involved a discretionary trust of the proceeds of an insurance policy for the benefit of three children; one of whom died intestate after the policy matured. The court rejected the two surviving children's claim to one-half of the proceeds. The Commission of Appeals held the trustee "[had a] right to use his own sound judgment and discretion as to how he will distribute * * * [the] fund between the two surviving Jackson children." The court cited with approval the rule as stated by Perry on Trusts, Vol. 1, par. 386a: "But a trust may be so created that no interest vests in the cestui que trust. Consequently such interest cannot be alienated, as where property is given to trustees to be applied, in their discretion, to the use of a third person, no interest goes to the third

person until the trustees have exercised this discretion." We think the clear intention of the testatrix here was that the undistributed income became a "part of the estate in trust" upon Buster's death and that in the absence of the exercise of discretion by the trustee, the withheld income that had accumulated passed to the lawful issue of Buster and not to his estate.

Appellant Van Hoose and those who claim under her as executrix of Buster's estate, also contend in the alternative that Buster's estate is vested with this undistributed income because the trustee had exercised his discretion to pay over this undistributed income to Buster before he died. They contend the discretion to pay this accumulated income to Buster during his lifetime was actually exercised in a letter written by the trustee, and by certain allegations in the original pleadings filed by the trustee in the instant suit prior to Buster's death.

In December of 1959, Paul Waggoner resigned as trustee of the Electra Waggoner Trust and filed suit in the District Court of Wilbarger County in which he accounted for the receipts and disbursements of the trust during his tenure. In a judgment rendered in that case on February 6, 1961 the trial court approved the accounting and determined that the sum of $994,971.93 was properly classified as undistributed income as of January 4, 1960. Between January 4, 1960 and May 28, 1963, the date of Buster's death, $25,535.60 additional income was expended in connection with the 1961 accounting suit making a *total* of $1,020,507.53 classified on the trust books as undistributed income as of the date of Buster's death. The trial court found this amount did not exist in cash and had not been paid or delivered to Buster or to his estate. It is this *undistributed income* appellants *contend* passed to them as beneficiaries of Buster's estate.

The present suit, Cause Number 12,249, was filed by Killen M. Moore as trustee of the Electra Waggoner Estate on January 18, 1963, prior to Buster's death. The suit sought approval of the court of a proposed sale by the trustee of 12,000 shares of stock of the W .T. Waggoner Estate to the W. T. Waggoner Estate, and for instructions with respect to the payment to Buster of the undistributed income of the Electra Waggoner Trust. The court did not pass upon these matters nor was the stock sale consummated because of the death of Buster on May 28, 1963. Thereafter numerous claims to both principal and income were filed and the judgment from which this appeal was taken was subsequently entered.

■ The Van Hoose Group challenges the findings of the trial court that the trustee's original pleadings in this cause; the trustee's letter of April 8, 1961 addressed to Buster; or the classification of sums as undistributed income in the general journal of the Electra Waggoner Trust, "did not individually nor collectively constitute an exercise of discretion to make any distribution of income to A. B. Wharton, Jr." The pleadings referred to are found in the trustee's original petition filed January 18, 1963 and the amended original petition filed February 11, 1963. The material allegation in both pleadings relied upon by appellants read: "It is the intention of plaintiff to pay to Albert Buckman Wharton, Jr., the net amount due him as undistributed income in the event this court considers that the making of such payment would be a proper disposition of plaintiff's fiduciary duties." The trustee's letter made reference to the trial court's judgment in the 1961 accounting suit which determined the amount of the undistributed income "is subject to future distribution as income to A. B. Wharton, Jr., pursuant to and in accordance with the provisions of the will and codicil of Electra Waggoner, deceased." The letter then read in part: "This is to advise you that, should the trustee be in receipt of cash at some time in the future which is available for distribution, and it is determined that the distribution of such funds to you is pursuant to and in accordance with the provisions of

the will and codicil of Electra Waggoner, deceased, I will make such distribution to you at that time." The trustee's allegation, quoted above, was superseded by subsequent amended pleadings and did not appear in the fourth amended petition upon which this cause went to trial. The trustee's amended answer expressly denied the Van Hoose Group's pleadings that the actions of the trustee constituted the exercise of discretion to pay to Buster the undistributed income. Both the trustee's letter and pleadings conditioned the payment of undistributed income upon the approval of the trial court "that the making of such payment would be a proper disposition of plaintiff's fiduciary duties"; the receipt of cash available for distribution in the future; and the determination that such distribution would be in accordance with the provisions of the will and codicil. The record shows Buster was rather heavily indebted to the W. T. Waggoner Estate prior to the filing of the instant suit. The trial court found he initiated the negotiations between the trustee and the W. T. Waggoner Estate for the sale of the 12,000 shares of the estate stock to secure cash to pay over to Buster. We are of the opinion, and so hold, these actions of the trustee did not constitute the exercise of discretion to pay over the undistributed income to Buster. It therefore must be concluded the undistributed income did not vest in Buster's estate upon his death, but passed to Buster's lawful issue surviving.

The next question to be decided is whether or not Rita Lorena Wharton, an adopted daughter of Buster Wharton, is a "lawful issue" of Buster within the meaning of that term as used in Electra's will and codicil. It is undisputed Albert Buckman Wharton III, the natural son of Buster, is a lawful issue surviving. The trial court found Electra Waggoner did not intend to include adopted children as lawful issue within the meaning of the testament, and held Albert Buckman Wharton III was the only lawful issue of Buster surviving. Rita Wharton contends she is a lawful is-

sue of Buster for the following reasons: (1) Electra was domiciled in New York City at the time of her death; that her estate consisted primarily of her interest in the W. T. Waggoner Estate, which was personalty; and that New York law governs the interpretation of the phrase "lawful issue" and under such law "lawful issue" includes adopted children; (2) the circumstances surrounding the execution of Electra's will clearly show an intent to include adopted children within the term "lawful issue" under Texas law; (3) the testatrix intended the phrase "lawful issue" be determined under the law existing at the time of the death of Buster in 1963; and that Rita was the lawful issue of her father under Article 46a, Revised Texas Civil Statutes in effect at the time of Buster's death.

Appellant Rita Wharton contends there is no evidence and insufficient evidence to support the trial court's findings and conclusions that Electra's domicile of origin and choice was in the State of Texas and her historical place of residence was at Zacaweista, in Wilbarger County, Texas. The Texas Supreme Court has established the elements of domicile as: "an actual residence, with the intent to make it a permanent home." Snyder v. Pitts, 150 Tex. 407, 241 S.W.2d 136. The court defined "home" as a "true, fixed and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning". The Court in *Snyder* clearly enunciated the rule of law "from the fact that there can be but one domicile and several residences, we arrive at the conclusion that the element of 'intent to make it a permanent home' is not necessary to the establishment of a second residence away from the domicile." See 21 Tex.Jur.2d, Domicile, Sections 1–2, p. 61.

Although there is some evidence in this record that James A. Gilmore, the last husband of Electra, "resided" in New York City at the time of his marriage to

Electra on February 14, 1925 on a yacht off Palm Beach, Florida, the record is silent as to his domicile. They apparently lived in various hotels in New York City for the relatively short period of time between their marriage on February 14, 1925 and their separation on or about May 1, 1925. Electra filed suit against Gilmore for annulment in the District Court of Wilbarger County, Texas on May 26, 1925. Her pleadings in that suit alleged her place of residence to be in Wilbarger County. She executed her codicil in Fort Worth on June 1, 1925 in which the bequest to Gilmore was reduced from $25,000.00 to $1.00. The appellant cites the case of Wood v. Wood, 159 Tex. 350, 320 S.W.2d 807 for the rule of law that upon the marriage of Electra and Gilmore, Electra became a domiciliary of New York City. The court reaffirms the general rule that a wife's domicile follows that of her husband and before separation she may not acquire one of her own apart from him, but the court then holds "though she is free to choose her own domicile thereafter." Appellants also point out the fact Electra and Gilmore entered into a five-year lease of an apartment in New York City, and that she spent some $80,000.00 for furnishings for the apartment. However the record shows this lease was not executed until October 30, 1925, some seven weeks after her annulment from Gilmore was entered in the District Court of Wilbarger County, and less than a month prior to her death on November 26, 1925. Since the apartment was leased after her separation and annulment, this act did not serve to establish her domicile in New York City. There is evidence Electra returned to New York after she married Gilmore; although the record does not show where they actually lived during the few months they lived together as husband and wife; her will was prepared by New York lawyers and executed in her New York apartment on March 19, 1925; she purchased an automobile in New York and maintained a large bank account in a bank of that city; and she died in New York City on November 26, 1925. In our view, this evidence does not establish her domicile in New York. Electra Waggoner was a native born Texan. The Waggoner fortune had long consisted of ranching and oil properties in north Texas, with the headquarters of the W. T. Waggoner Estate located in Vernon, Wilbarger County, Texas. Her principal estate was her interest in the W. T. Waggoner Estate. In 1910 or 1911, during her marriage to A. B. Wharton, Sr., Electra built a large home at Zacaweista, in Wilbarger County. According to Mrs. Paul Waggoner, who had been in the Waggoner family since 1910, "Well, her [Electra's] home was Zacaweista; she lived there. That was her real home. These other places were places she would go, you know, but that was her home, Wilbarger County." On numerous occasions Electra occupied apartments and houses in Dallas, Fort Worth and New York City; she and her second husband, Weldon Bailey, lived for a time on a ranch in Arizona; she occupied a summer home in Springlake, New Jersey for several summers including the summer of 1925. The divorce decree dissolving the marriage of Electra and Bailey was entered on January 6, 1925 by the District Court of Wilbarger County. Her allegations were to the effect she was a resident of the State of Texas and Wilbarger County. On January 10, 1925, Electra confirmed her Wilbarger County residency in a power of attorney to her father. Another power of attorney, dated February 28, 1925, to her father again gave her residence as "Vernon, Texas". Her annulment suit against Gilmore was filed in Wilbarger County on May 26, 1925. Her pleadings alleged she was a resident of Wilbarger County, Texas. She appeared in court in Vernon when she obtained the annulment from Gilmore on September 11, 1925. That judgment found that "the matrimonial domicile of plaintiff and defendant is in Wilbarger County, Texas." Electra's will was probated in Wilbarger County. Her estate was taxed as a nonresident of New York. We therefore are of the opinion there was probative evidence that Texas was the domicile of

Electra Waggoner at the time she executed her will and codicil and at the time of her death.

Having determined Electra Waggoner was domiciled in Texas; the situs of the W. T. Waggoner Estate is in Texas; and the trustees of the Electra Waggoner Estate have continuously resided in Texas where the estate will be managed; the will and codicil will be construed under the laws of this state. The general rule is settled that the construction of wills is to be determined by the law of the testator's domicile insofar as it relates to personal property, in the absence of the manifest intention of the testator that the law of another jurisdiction governs. Lanius v. Fletcher, 100 Tex. 550, 101 S.W. 1076. Dunham v. Crossland (Tex.Civ. App.) 115 S.W.2d 742; affirmed 135 Tex. 301, 140 S.W.2d 1095. Owen v. Younger (Tex.Civ.App.) 242 S.W.2d 895. Wilson v. Smith (Tex.Civ.App.) 373 S.W.2d 514 (Ref. N.R.E.). There is no showing here that Electra had the intention of having her testamentary trust controlled by the laws of any jurisdiction other than by the laws of this state. This cause was tried on the premise the laws of Texas were controlling, there were no pleadings or proof that New York law was controlling in the construction of Electra's will and codicil, nor was the trial court requested to take judicial knowledge of New York law relating to the construction of testamentary documents as permitted by Rule 184a, Texas Rules of Civil Procedure. It is therefore presumed New York law to be the same as the law in this state. Ogletree v. Crates, 363 S.W.2d 431 (Sup.Crt.). Alexander v. Ling-Temco-Vought, Inc. (Tex.Civ.App.) 406 S.W.2d 919 (Ref. N.R.E.). Milner v. Schaefer (Tex.Civ.App.) 211 S.W.2d 600 (Writ.Ref.).

We must determine therefore whether or not Rita Wharton, the adopted daughter of A. B. Wharton, Jr., is the "lawful issue" of A. B. Wharton, Jr. within the meaning of that term as used in Elec-tra's will and codicil under the laws of Texas. Whether or not Rita is a "lawful issue" of her adoptive father depends upon the intention of the settlor and this intention must be determined at the time of the creation of the trust and not at the time of Wharton's death. Cutrer v. Cutrer, 162 Tex. 166, 345 S.W.2d 513. Vaughn v. Vaughn, 161 Tex. 104, 337 S.W.2d 793. Davis v. Corabi (Tex.Civ.App.) 421 S.W. 2d 677, 90 C.J.S. Trusts 169 b, p. 44.

Texas has followed the general rule that an adopted child is not entitled to property conveyed or devised to the "children" of the adoptive parent unless a contrary intent is disclosed by additional language of the instrument or circumstances. Cutrer v. Cutrer, supra. Murphy v. Slaton, 154 Tex. 35, 273 S.W.2d 588. Cochran v. Cochran, 43 Tex.Civ.App. 259, 95 S.W. 731 (N.W.H.) The *Cutrer* case involved the construction of three trusts devising a remainder interest to the beneficiaries', "child or children", and "issue" and "heirs of his body". In holding that the adopted child of an adoptive parent and life beneficiary was not a child or heirs of the body within the terms of the trust, the court noted that the words "children" and "issue" were used interchangeably by the settlors and "the latter term clearly connotes blood relationship". We therefore conclude Electra did not intend to include an adopted child of either son within the term "lawful issue" as the term was used in her will and codicil unless a contrary intention is disclosed by the circumstances surrounding the execution of the testamentary instruments.

Electra executed her will on March 19, 1925 and her codicil on June 1, 1925 when Tom was twenty-one years of age and Buster was fifteen. Tom was married to his second wife at that time. He subsequently married six more times before his death on October 8, 1928 at the age of twenty-five. He had no children by any of these marriages, nor did he adopt any children. Electra's son, A. B. Whar-

ton, Jr., frequently referred to in this opinion as Buster, adopted Rita Lorena Wharton in December 1959, some ten years after Buster's marriage to Rita's mother, and 34 years after Electra executed her will and codicil and her death. It does not appear that any member of the Waggoner family had ever adopted a child prior to the 1959 adoption of Rita.

There is evidence in this record that Tom had been sterile by disease since he was eighteen years of age. This was revealed in two suits filed in 1930 to set aside certain provisions of a 1927 paternity judgment entered against Tom in favor of Irene Marie Rolfe, the sixth of his eight wives. The pleadings and evidence of the latter two cases clearly reveal the ignorance of such sterility on the part of Tom's grandfather and guardian, W. T. Waggoner, and the family's longtime attorney. The 1930 judgment found that Tom was sterile and that the child born to Irene Rolfe in June 1927 was not the child of Tom. Although Paul Waggoner testified Tom's sterility "was generally known with the family" he did not remember the paternity case or the issue involved. In response to a question inquiring if Electra knew of Tom's sterile condition, Paul testified: "I imagine she did, I never discussed that with her. I knew nothing about it." This evidence is insufficient to show Electra had actual knowledge of Tom's sterile condition at the time she executed her will and codicil. There is no evidence of circumstances surrounding the execution of the testamentary instrument that show an intention on the part of Electra to include adopted children of her sons within the term "lawful issue".

The final points of error of all appellants have to do with the trial court's refusal to award attorneys' fees and expenses, payable from the corpus of the testatrix's estate, to these appellants. The trial court's award of attorneys' fees from the corpus to the guardian ad litem of the Hays' minors and the attorneys for the trustee is not challenged. In its findings

of fact the trial court found this suit is "litigation between adverse claimants over the title to the assets remaining in the Electra Waggoner Trust at the time of its termination"; that the trustee has not alleged or contended that the will and codicil of Electra Waggoner are ambiguous; that the attorneys' fees and expenses incurred by appellants were incurred "not for the benefit of the Electra Waggoner Trust or the equitable owner of its assets"; and that the legal services rendered by these appellants "did not result in the recovery or enhancement of any assets" of the trust. The trial court concluded it had no authority in law or in equity to order payment of attorneys' fees or expenses out of the trust estate to these respective adverse claimants.

The suit was originally initiated by the trustee when his original petition was filed on January 18, 1963. The purpose of this suit was to obtain approval of the court for the sale of 12,000 shares of the W. T. Waggoner Estate and in the event such sale was approved, the trustee sought instructions with respect to the payment to Buster out of the proceeds of such sale the amount of undistributed or unpaid income that the court may determine to exist. Buster's death on May 28, 1963 terminated the Electra Waggoner Trust and the stock sale was never consummated. Shortly after his death, this cause took on a completely different complexion. Within a short time after Buster's death all appellants filed claims against the estate. Numerous complex claims and counter claims were filed by the various appellants up to the cut-off date of March 16, 1964 set by the trial court. Additional amended pleadings were subsequently filed by leave of the court. These claims have been set out above and need not be restated here. There is no contention the will and codicil are ambiguous. The trial court has denied the claims of these appellants and has held in effect none of them are beneficiaries under the testamentary instruments and thus have no interest in the trust. A. B. Wharton III was adjudged the sole lawful

issue of his father and as such sole lawful issue was the owner of the Electra Waggoner Estate. The appellants were the unsuccessful adverse claimants to the assets of the estate. These facts distinguish the instant case from those relied upon by the appellants, including: American National Bank v. Biggs (Tex.Civ.App.) 274 S.W.2d 209 (Ref. N.R.E.) and In Re: Atwood's Trust, 227 Minn. 495, 35 N.W.2d 736, 9 A. L.R.2d 1126. These cases and others relied on by appellants, permit recovery by a *beneficiary* out of trust assets for attorneys' fees incurred in litigation which resulted in a benefit of the trust as a whole. These cases are not controlling under the record of this cause.

 Texas has adopted the general common law rule that unless provided for by statute or contract between the parties, attorneys' fees incurred by a party to litigation are not recoverable against his adversary either in an action in tort or on contract. Turner v. Turner, 385 S.W.2d 230 (Tex.Sup.Crt.). Van Zandt v. Fort Worth Press, 359 S.W.2d 893 (Tex.Sup. Crt.). Clark v. Wisdom (Tex.Civ.App.) 403 S.W.2d 877 (Ref. N.R.E.). We find no provision in the Texas Trust Act or other statutory provisions authorizing the recovery of appellants' attorneys' fees in this cause. We think the trial court correctly denied the recovery of attorneys' fees and expenses incurred by these appellants.

The trial court taxes 60% of the costs of the Clerk of the Court against appellant Van Hoose and 40% against the Guy Waggoner Group. The trial court properly exercised its discretion in awarding these costs in accordance with Rules 131 and 141, Texas Rules of Civil Procedure. The trial court further awarded Ney Sheridan, Jr., as guardian ad litem of the three minor children of Elise Waggoner Hay, substantial attorneys' fees as court costs against the trustee for services rendered through the trial of the cause. The allowance of such fees and expenses is authorized by Rule 173, Texas Rules of Civil Procedure. As guardian ad litem he seeks a remand of this cause to the trial court for a determination and assessment of costs for additional attorneys' fees for services performed on this appeal. The trial court's judgment made no provision for the allowance for attorneys' fees of the guardian ad litem for this appeal, and this court is without authority to determine an issue not passed upon by the trial court. This court is limited to a determination of questions affecting the correctness of the judgment rendered by the court below. Smith v. Texas Company (Tex. Comm.App.) 53 S.W.2d 774. Volkmer v. Chase (Tex.Civ.App.) 354 S.W.2d 611 (Ref. N.R.E.). Brooks v. Texas Employers Insurance Association (Tex.Civ.App.) 358 S.W.2d 412 (Ref. N.R.E.).

The Van Hoose Group has brought forward points of error which have not been directly discussed. In view of our holding they become immaterial to this appeal. Appellees' cross-point relative to the practical construction placed upon Electra Waggoner's testament by all interested parties also becomes immaterial.

The judgment of the trial court is affirmed.